## GOAD *v.* STATE

[No. 354, September Term, 1964.]

346

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

*Decided June 28, 1965.*

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

The cause was argued before Prescott, C. J., and Hammond, Marbury, Sybert and Oppenheimer, JJ.

*Paul Smelkinson* for appellant.

*Julius A. Romano, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General,* and *Charles E. Moylan, Jr., State's Attorney for Baltimore City,* on the brief, for appellee.

Prescott, C. J., delivered the opinion of the Court.

This case again points out the handicaps under which peace officers in Maryland frequently find themselves due to the unusual distinctions between felonies and misdemeanors in this State. David Kauffman, in an able and widely-read article, pointed out some of the problems arising therefrom as early as 1941. See 5 Md. L. Rev. 125. Five years ago, this Court called attention to the fact that these problems still persisted then, and they could be dealt with by legislative, but not judicial, action.

*Oden v. State,* 222 Md. 325. The problems, for the main part, are still existent.

Appellant was convicted of unlawfully breaking into a warehouse in Baltimore City and stealing therefrom goods and chattels of the value of $15.25. Code (1957), Article 27, § 33.

The only question for our determination is whether or not the defendant's arrest was illegal, for the State, quite properly, concedes that if his arrest were illegal, the search of his person immediately thereafter was unreasonable and the personal property seized as a result of the search should not have been received into evidence.

At about 12:15 a.m. on February 5, 1964, the burglar alarm of the warehouse involved went off. Within minutes, a representative of the National Detective Corporation, a Mr. Gaugh, was on the scene. He discovered two men there: one was coming out of a window of the warehouse; the other was outside, coming over a hill at the rear of the building. Gaugh radioed his office to inform the police. Unfortunately, he was unable to get a good view of either of the men and therefore was not able to give the police, when they arrived, a detailed description of them. The only description he gave to the police was that one of the men was wearing a "black three-quarter length coat." (It would be interesting to know how many men in Baltimore were wearing this type of coat in February, 1964.) This was the description of the suspect that was broadcast by the police. The man wearing the above mentioned coat ran across a road, and just beyond the road was a stream. Gaugh's testimony seems to indicate that the man wearing the overcoat was the one he saw coming out of the window, but he does not say so with certainty; nor did he make it clear that the two were acting in concert. He did not at anytime, including the time of trial, identify the appellant, and frankly admitted that he could not.

Officer Marslett, together with Officer Wheatley, was parked in a cruising police car nearby. After hearing by broadcast of the entry, they went to the scene. They learned that the two men had fled, and that the one wearing the black coat had run in the direction of the stream. They began cruising the area. At about 12:45 a.m., they observed the appellant walking on a

grass plot close to Jones Falls Expressway at North Avenue. This was, perhaps, a half-mile from the warehouse. They hailed the appellant, and, after observing he was wet from the waist down, immediately arrested and searched him. The search produced a flashlight, a transistor radio, and a screwdriver which were admitted in evidence over objection. (The flashlight and radio were later identified by employees at the warehouse as having been rifled from their desk drawers.) The officer testified that appellant was arrested because "there was a felony committed in the area." When asked, "What felony?", he replied, "Breaking and Entering." (Breaking and entering a warehouse, as distinguished from breaking and entering a dwelling in the nighttime, is still a misdemeanor in Maryland.) There were, of course, additional facts, but the above are all that are pertinent to the question we must answer.

Appellant argues that his arrest, without a warrant, was made not for a misdemeanor committed in the presence, or the view, of the arresting officers, and at a time when the police did not have probable cause to believe that a felony had been committed, and he had committed it; hence his arrest was illegal. The State concedes that the arrest was not made for a misdemeanor committed in the presence, or view, of the officers, but earnestly contends that the officers had probable cause to believe that a felony had been committed, and that appellant had committed it; consequently, the arrest was legal. Our answer to these contentions will, unquestionably, be discouraging to an obviously good piece of police work, but it is dictated by authority beyond our control.

Before the decision of the Supreme Court in *Mapp v. Ohio*, 367 U. S. 643 (1961) which flatly reversed its previous decision in *Wolf v. Colorado*, 338 U. S. 25, and held that in a State criminal prosecution evidence which had been secured as a result of an unreasonble search and seizure was inadmissible, this Court, consistently, had held (with certain statutory exceptions) such evidence admissible. This Court reasoned that if a person be indicted by a Grand Jury for taking another's life, ravishing his wife, or stealing his life's earnings, the determination of the guilt or innocence of such a person should not be considered as a sporting event, to be governed by the Mar-

quis of Queensberry Rules, but by a practical and actual determination of the guilt, *vel non,* of the indictee, with the State, in order to prevail, being required to establish guilt beyond any reasonable doubt and to a moral certainty to the unanimous satisfaction of twelve of defendant's peers, when a jury trial is elected, which, in this State, is at the option of the accused. It is difficult to discern wherein this procedure fails to afford a defendant in a criminal prosecution every reasonable and just right to which he is entitled, and, if the accused be actually guilty, the logic of having the determination of this guilt and the possible punishment therefor depend upon whether an arresting officer has as much knowledge as an appellate court concerning what is and what is not technically "a legal arrest" is hard for some to follow. The practicality, if indeed not the good sense, of the Court of Appeals' reasoning seems to be confirmed, at least in part, by the following short excerpts from the recent case of *Linkletter v. Walker,* 381 U. S. 618, wherein it is stated: "But there is no likelihood of unreliability [of the evidence] or coercion present in a search and seizure case. Rather than being abhorrent at the time of seizure in this case, *the use in State trials of illegally seized evidence had been specifically authorized by this Court in Wolf.* * * *. Here, as we have pointed out, the fairness of the trial is not under attack. All that petitioner attacks is the admissibility of evidence, *the reliability and relevancy of which is not questioned, * * ** [which is exactly the situation we have in the case at bar]." (Italics ours.) The law, of course, provides a civil remedy for persons who are illegally arrested, or are the subjects of unreasonable searches or seizures. We proceed to a determination of the question involved herein.

The appellant committed no crime in the presence, or within the view, of the arresting officers; hence the legality of his arrest without a warrant depended upon whether the officers had probable cause to believe that a *felony* had been committed and appellant had committed it. Probable cause to believe that a felony had been committed and that appellant committed it, as here used, exists where the facts and circumstances within the arresting officers' knowledge and of which they have reasonably trustworthy information are sufficient, in themselves,

to warrant a man of reasonable caution to believe that a felony has been committed and appellant committed it. *Price v. State,* 227 Md. 28; *Farrow v. State,* 233 Md. 526. We have been unable to discover in the evidence wherein the officers had sufficient knowledge or information that a felony had been committed. True they had information that a man was seen coming out of a warehouse late at night, but the breaking and entering of a warehouse, even with intent to steal goods of the value of $100 or upwards although punishable by confinement of up to ten years, is still, in Maryland a misdemeanor. The testimony of one of the arresting officers shows that he was under the mistaken idea that it constituted a felony. Larceny of goods of the value of $100 or more is a felony, but, at the time of the arrest, the officers had no information that anything had been taken from the warehouse, and the officers made no claim that appellant was being arrested for an alleged larceny or any other felony. Hence, if we assume that the officers had probable cause to believe there had been a breaking and entering of the warehouse and the intruder intended to steal everything he could (without any knowledge or information that anything was stolen), still, under the unusual treatment of crimes in this State, the offense would only constitute a misdemeanor, which, not having been committed in the presence, or view, of the officers, would not justify appellant's arrest without a warrant. As the arrest was illegal, the search for, and seizure of, the property, as an incidence thereto, were unreasonable; consequently, this property should not have been received as evidence.

> *Judgment reversed, and case remanded for a new trial; costs to be paid by the Mayor and City Council of Baltimore.*