## WARREN CHRISTOPHER ROBINSON *v.* STATE OF MARYLAND

[No. 106, September Term, 1967.]

516

*Decided July 9, 1968.*

The cause was argued before MURPHY, C. J., and MORTON, ORTH, and THOMPSON, JJ.

*Howard L. Stern* for appellant.

*Thomas N. Biddison, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

The appellant was found guilty of storehouse breaking with intent to steal goods of the value of $100 or more [1] and grand larceny by a jury in the Circuit Court for Prince George's County. He was sentenced to imprisonment for a term of 5 years on each offense, the sentences to run concurrently.

About noon on 4 July 1965 Officer Charles Ward of the Prince George's County Police Department, on routine patrol, observed that a lock had been cut on a gate in the chain fence enclosing an area in which a storehouse was situated. He drove into the area and further observed that a door to the storehouse had been broken. He saw four men inside the storehouse. One of them called, "There's the cops" and all four ran. Two of them, one of whom the officer identified as the appellant, ran out the door. The officer chased them and they jumped the fence and escaped amid a fusillade of shots fired by the officer. He "put a lookout" for the four men, for breaking and entering, describing the clothes of the appellant and the other man who had jumped the fence.

Officer Philip Donahue, of the Bladensburg Police Department, heard the lookout about 12:10 P.M. He saw the appellant and another man answering the descriptions given "coming out from the railroad tracks" about three-quarters of a mile from the storehouse. "I observed the defendant and then I saw

---

1. The crime was a misdemeanor on 4 July 1965, the time it was allegedly committed. Md. Code (1967 Repl. Vol.) Art. 27, § 32. By chapter 628 of the Acts of 1966 it was made a felony but the Act is not applicable to crimes committed before 1 June 1966.

that he was running, his pants were all raggedy and torn up and he matched the description that the lookout was put out for". They came onto Kenilworth Avenue, "hitch-hiking". As the officer approached in his car, they entered a car which had stopped to give them a lift. Donahue ordered them out at pistol point and the appellant said to his companion, "Let's get him. There's only one of him". The officer called for help on his car radio and about five minutes later Officer Donald DeSantis of the Prince George's County Police Department arrived. He searched them—"we always check them for weapons before they get in the car or anything of that nature"—and seized $205 from the person of the appellant. He took them back to the storehouse and turned the men and the money over to Sergeant Joseph Thornberry who was at the scene with other officers. Detective Sergeant Frank Bishop arrived and the appellant was again searched and an automobile registration card seized from him. "As a result of information on that registration card" Bishop went to a white 1962 Cadillac convertible that was parked outside the front gate of the storehouse fence and without opening the doors, looked inside, and saw a pair of bolt cutters on the rear floor. He searched the car and seized the bolt cutters. They were identified by him at the trial. The automobile was taken to the police station lot in Seat Pleasant and photographed. At the trial two photographs were identified by the photographer and by Bishop as being photographs of the automobile from which the bolt cutters were recovered. The bolt cutters, although marked for identification, were never offered in evidence. The photographs were received in evidence while Bishop was on the stand.

The evidence as above summarized was received in the presence of the jury. The appellant objected to testimony with regard to the Cadillac and the photographs of it when the photographer was testifying, when Officer Ward was testifying, when Officer Bishop was testifying and objected to the photographs being received in evidence. He moved for a mistrial when the bolt cutters were displayed and identified and later moved for a mistrial regarding the evidence concerning the Cadillac "because just to move to strike all the testimony about this Cadillac from the trial, there has been too much in it and the pictures

have been admitted in evidence and it is highly prejudicial". He moved to strike all testimony with regard to the bolt cutters. The answer of the State to that motion was that the bolt cutters were not going to be introduced in evidence. The bases of his objections and motions were that his arrest was illegal and that the search of his person and automobile and the seizure of evidence as a result thereof were unlawful. The objections were overruled and the motions denied. At the conclusion of evidence offered by the State the trial court said to the jury, "Members of the jury, anything you see lying around on the table introduced for identification purposes, unless it has been offered in evidence and admitted in evidence you are not to consider it". It denied a motion for judgment of acquittal on all counts.[2] At the conclusion of all the evidence the appellant moved "to strike from the evidence and the record the items seized as a result of the arrest, and that is the wallet and its contents, the registration card, the subsequent seizure of the Cadillac, the pictures of the Cadillac and the pictures that have been placed in evidence, and in addition the $205. All references within the record concerning these matters should be struck and we base our motion on the fact of the illegal arrest". The court then granted the motion to quash all the evidence as to the bolt cutters, the car and the pictures of it and the cash. It denied a motion for judgment of acquittal as to the storehouse breaking and larceny and granted the motion as to receiving stolen goods. In its charge to the jury the court said:

> "Now, there is certain evidence that was admitted during the course of the trial that was also stricken by virtue of the motions because the Court determined that the search, original search, was an illegal search and all the fruits that flowed from that illegal search are inadmissible. Therefore, you will strike from your minds all the exhibits that were admitted except—may I have them, Mr. Clerk?—the picture of the broken glass on the door, the picture of the inside of the warehouse showing the safe and the other pictures showing the safe with the pipe here sitting on top of it. You

---

2. The appellant was also charged with receiving stolen goods.

may properly consider that along with the two plats that were drawn by the witnesses. And you may likewise consider all the testimony that has not been excluded other than the fruits of the search, you may not consider that. The snippers (bolt cutters) and the pictures of the automobile and the possession on the defendant of the sum of money, you may not consider that because that flowed from the fruits of an illegal search".

Maryland Rule 729, effective 1 September 1967, provides for the filing of a motion for the suppression, exclusion or return of property seized which may be used as evidence at trial on the ground that it was obtained by an unlawful search or seizure. Section b, subsection 1. But the rule does not require a pre-trial motion and the failure to file such motion before trial "shall not constitute a waiver of a defendant's right to object at the trial to the introduction of such evidence". Section c. When such motion is filed at least five days prior to the trial date, or if a petition is transferred to the court of criminal trial jurisdiction as provided by the rule, the trial shall not commence until the matter is determined by the court. Section d, subsection 1. In all other cases the court shall have discretion to determine the motion as a preliminary matter or during trial. "If the case is being tried before a jury the hearing on the motion, or on objection to the introduction of evidence alleged to have been obtained by an unlawful search and seizure, shall be out of the presence of the jury". Section d, subsection 2. The rule was not effective at the time of the appellant's trial, but the substance of it was the preferred procedure prior to its adoption. It was established before the rule was adopted that the determination of the admissibility of evidence which is dependent upon the lawfulness of an arrest should be made by the trial judge as a preliminary matter quite apart from the question of the guilt or innocence of the accused. "If the case is being tried before a jury, such a matter should be heard out of the presence of the jury". *Farrow v. State*, 233 Md. 526, 533. Nor was it essential prior to the effective date of the rule, that a motion to suppress the evidence be made prior to trial.

A motion to suppress the evidence and objection to its introduction at trial preserved a defendant's basic constitutional right. *Shrout v. State,* 238 Md. 170, 174. In the instant case we think the trial court erred in not determining the matter of the admissibility of the challenged evidence out of the presence of the jury. The question is whether in the facts and circumstances the error was so prejudicial as to require reversal of the judgments.

## THE ARREST

The law of arrest in Maryland has not been codified but is the "spawn of judicial and social thought, to many * * * long been considered mature in its present state". *The Law of Arrest in Maryland* by David Kauffman, 5 Md. L. Rev. 125, 171 (1941). Mr. Kauffman points out: "To those more keenly cognizant of the change in the requirements of an administration of criminal justice, the doctrine is not only mature, it is over-ripe". The probative force of this observation is enhanced by the felony-misdemeanor distinction in this State, for this distinction plays a large part in the determination of whether an arrest made without a warrant is valid or invalid, *Shelton v. State,* 3 Md. App. 394; *Boone v. State,* 2 Md. App. 479, and, in turn, the validity of the arrest determines whether a search incident thereto is reasonable as to make evidence seized thereby admissible, *McRae v. State,* 3 Md. App. 388. The general rule is that a warrantless arrest by a police officer is valid where he has probable cause to believe at the time of the arrest that a felony has been committed and that the person arrested has committed it. *Duckett v. State,* 3 Md. App. 563, 572. But when the offense is a misdemeanor, the general rule is that a warrantless arrest by a police officer is valid where he has probable cause to believe that a misdemeanor has been or is being committed *in his presence or view* and that the arrestee is the misdemeanant. *Thompson v. State,* 4 Md. App. 31, 37; *Salmon v. State,* 2 Md. App. 513, 522. See *McCarthy v. State,* 2 Md. App. 400.

Under the common law felonies denote offenses "as are of a deeper and more atrocious dye; while smaller faults, and omissions of less consequence, are comprised under the gentler

name of 'misdemeanors' only".[3] 4 Blackstone, *Commentaries* 5. In Maryland only those crimes are felonies "which were such at common law, or have been so declared by statute". *Bowser v. State,* 136 Md. 342, 345; *Dutton v. State,* 123 Md. 373, 378. It is clear that the common law differentiation between felonies and misdemeanors is not practical in application today. Nor can the Maryland system of differentiation be logically supported.[4] In many instances there is no correlation between the designation of the offense as a felony or misdemeanor and the seriousness of the crime or the severity of the punishment permitted. This has been recognized to some extent by the legislative designation of some crimes as felonies which were theretofore misdemeanors.[5] And the felony-misdemeanor differentiation is no longer material with respect to the admissibility of evidence. Since *Mapp v. Ohio,* 367 U. S. 643 (1961) illegally seized evidence is not admissible, be the prosecution for a felony or a misdemeanor.[6] *State v. Jacobs,* 242 Md. 538. But the differentiation is still relevant to the determination of the validity of an arrest and peace officers in Maryland frequently find themselves under a handicap due to the unusual distinctions between felonies and misdemeanors. Eight years ago, in *Oden v. State,* 222 Md. 325, 329, the Court of Appeals referred to the problems pointed out *inter alia* in the Kauffman article, and noting that they still persisted, stated that they could be dealt with by legislative, but not by judicial action. The Court found the problems to be still existent in 1965, *Goad v. State,*

---

3. The common law felonies were murder, manslaughter, robbery, rape, burglary, larceny, arson, sodomy and mayhem. *Hochheimer's Criminal Law* (1st Ed.) § 6, p. 3.

4. See 2 Md. L. Rev. 284.

5. For example, assaults with intent to rob, murder, rape or have carnal knowledge are now felonies. Md. Code (1967 Repl. Vol.) Art. 27, § 12.

6. In Maryland, prior to *Mapp,* illegally seized evidence was admissible as to felonies but, by statute, was inadmissible as to misdemeanors, prosecutions for carrying a concealed weapon and violations of the narcotics laws, and, in certain counties, for violation of the gambling and lottery laws excepted. Md. Code (1965 Repl. Vol.) Art. 35, § 5; Md. Code (1967 Repl. Vol.) Art. 27, § 299.

239 Md. 345, 347, and the instant case clearly shows that they exist today.

As more sophisticated means of communication became available to peace officers the general rule as to arrest for felonies was applied with reference to information received by the arresting officer over the police radio network. In *Mulcahy v. State,* 221 Md. 413, stating at p. 421, that, "[i]n this State it has long been settled that a peace officer may arrest without a warrant, provided there were reasonable grounds to believe at the time of the arrest that a felony had been committed and that the person arrested had committed the offense", the Court said, p. 422, that it is "wholly immaterial whether the suspicion arises out of information imparted to the officer by someone else, or whether it is founded on his own knowledge". In later cases both the Court of Appeals and this Court have held that a report of a felony and a description of the perpetrators broadcast over a police radio may furnish probable cause for an arrest.[7] But we do not think that it is a necessary conclusion from the language of opinions dealing with the matter that the arresting officer must himself have probable cause for the arrest, where another member of the police team has probable cause and the arresting officer has been alerted to make the arrest over the police radio.[8] We think that *Farrow v. State,* 233 Md. 526 and *Lamot v. State,* 2 Md. App. 378 are significant. In *Farrow,* a police officer in Baltimore City had probable cause to believe that the defendant had committed a rape and broadcast a description of the defendant and his automobile and that he was wanted by the Baltimore City police for rape and other crimes. The defendant was arrested by Anne Arundel County police officers. The Court said, pages 531-532:

"The officers in Anne Arundel County who made the arrest knew nothing about the probable cause but they

---

7. *Hopkins and Terry v. State,* 239 Md. 517; *Darby v. State,* 3 Md. App. 407; *Williams v. State,* 3 Md. App. 115; *Michaels v. State,* 2 Md. App. 424.

8. The question was not specifically answered in *Johnson, etc. v. State,* 238 Md. 528; *Anthony v. State,* 3 Md. App. 129; *Barton v. State,* 2 Md. App. 52; *Carwell v. State,* 2 Md. App. 45; *Crumb v. State,* 1 Md. App. 98.

had received a 'look out' for the defendant from a responsible source and we think that is sufficient. If the police team working on the particular case had accumulated sufficient information to furnish probable cause for a reasonable man to believe that the alleged crime had been committed and that there was probable cause to believe that the defendant was involved therein, there was sufficient cause for his arrest".

In *Lamot* we said, p. 384, citing *Farrow:*

"If the police officers, working as a team, had accumulated sufficient information to furnish probable cause for a reasonable man to believe that the alleged crime (a felony) had been committed and that there was probable cause to believe that the appellants were involved therein, there was sufficient cause for their arrest".

At common law an arrest without a warrant could be made by a peace officer for a misdemeanor only if it amounted to a breach of the peace committed in his presence. 4 Blackstone, *Commentaries* 292; 10 Halsbury's, *Laws of England,* 342-345, 3rd Ed. (1955) ; *Rex v. Bright,* 4 C. and P. 387 (1830). But he could not arrest for a past breach of the peace where the threat of a continuing or further breach of the peace in the immediate future was not existent. 2 Hale, *Pleas of the Crown,* 90.[9] A warrant was required to arrest for past misdemeanors. 4 Blackstone, *Commentaries* 289-296. Although the courts in some states still limit the right to arrest without a warrant for misdemeanors to those amounting to a breach of the peace

---

**9.** Hale, volume 2, pages 90-98, also recognized the right to arrest for a felony on probable cause. This right was apparently based on the fear that a felon would be more likely to attempt to escape, the crime being more serious. Also under the Statute of Winchester, 13 Ed. I, Stat. 2, C. 1 (1285), peace officers were charged with the duty of raising a "hue and cry" and assembling the townspeople in pursuit of offenders when a felony came to their knowledge. And according to Blackstone, watchmen were still empowered in the 18th century to arrest all offenders at night and hold them until morning as empowered by 13 Ed. I, Stat. 2, c 4.

committed in the presence of the arresting officer, *Radloff v. National Food Stores, Inc.,* 20 Wis. 2d 224, 121 N. W. 2d 865 (1963), most states follow the general rule and permit the arrest to be made for any misdemeanor committed or being committed in the presence or view of the arresting officer. Some states have done so by statute.[10] Maryland, among others, has done so by judicial decision. The first Maryland cases dealing with the matter came in the wake of the change of police authority in Baltimore City from the City to the State. See Lewis, *The Baltimore Police Case of 1860,* 26 Md. L. Rev. 215 (1966). Both *Mitchell v. Lemon,* 34 Md. 176 and *Roddy v. Finnegan,* 43 Md. 490, dealing with arrests in Baltimore City by police officers stated that an officer can arrest without a warrant for a misdemeanor committed in his presence. By 1895 when *B. & O. R. R. v. Cain,* 81 Md. 87 was decided the rule was firmly established, although the cases therein relied on, *Phillips v. Trull,* 11 Johns 486 (N.Y. 1814) and *Derecourt v. Corbishley,* 5 E. & B. 188 (Eng. 1855), were cases authorizing arrest for a breach of the peace in the officer's presence. In any event the rule has been consistently followed in this State.[11]

---

10. For example see *Ark. St. Ann.* (1962 Repl. Vol.) Art. 26, § 210; *Ariz. Rev. St.* (1956) § 13-1403; *Fla. St.* (1965) ch. 901.15; *Ky. Rev. St.* (1962) ch. 431.005; *Ill. Ann. St.* (1964) Art. 38, § 107-2; *Miss. Code Ann.* (1942) § 2470; *N. D. Cen. Code* (1967 supp.) § 29-06-15; *Standard Calif. Codes* (1965) § 836, Penal Code. See also 18 U.S.C.A. § 3052.

11. For example an arrest for a misdemeanor committed or being committed in the presence of the arresting officer has been held valid in the following cases: *Allen v. State,* 229 Md. 253; *LeFaivre v. State,* 208 Md. 52; *Griffin v. State,* 200 Md. 569; *Kershaw v. State,* 199 Md. 135; *Callahan v. State,* 163 Md. 298. In *Blager v. State,* 162 Md. 664, an admission by an accosted suspect that he was committing the misdemeanor of carrying illegal lottery slips validated an arrest.

Such an arrest was held to be invalid where the misdemeanor was committed in the presence of a private citizen and not in the arresting officer's presence—*McCarthy v. State,* 2 Md. App. 400; when the offense was committed in no one's presence—*Robinson v. State,* 229 Md. 503; *Oden v. State,* 222 Md. 325; *Davids v. State,* 208 Md. 377; *Walker v. State,* 195 Md. 412; where the offense was committed in the presence of a private officer—*Goad v. State,* 239 Md. 345.

In the instant case Officer Ward observed the cut lock on the gate in the fence, the broken door of the storehouse, the appellant on the premises and the flight of the appellant at the appearance of the police. These facts and circumstances within the officer's knowledge were sufficient in themselves to warrant a man of reasonable caution in the belief that the misdemeanor of breaking the storehouse had been committed or was being committed in his presence and view and that the appellant was the misdemeanant. But Ward was not the arresting officer. The appellant was arrested by Officer Donahue who heard the police broadcast of a "lookout" for the four men seen by Ward, for breaking and entering, and describing the appellant.[12] The question is whether a police officer may arrest for a misdemeanor committed in the presence of another police officer upon receipt of information that the misdemeanor has been committed and of a description of the misdemeanant.[13] In *Silverstein v. State,* 176 Md. 533 a detail of police officers in plain clothes was sent to investigate if the law against gambling was being violated on the premises of the defendant. One of the officers,

---

**12.** Larceny of $100 or more is a felony, but at the time of the arrest, the officers had no information that anything had been taken from the storehouse and made no claim that the appellant was being arrested for grand larceny or any other felony. The "lookout" designated the crime as breaking and entering, then a misdemeanor.

**13.** In *Stanley v. State,* 230 Md. 188 the accused was arrested by Baltimore City Police for a misdemeanor on the basis of information received on the police radio. The broadcast was made on the basis of information given by a federal agent whose information was relayed to him by the federal agents in New York. The New York agents had observed the accused but, unlike the instant case, had not seen him commit the misdemeanor. The arrest was held to be invalid. In *Prosser v. Parsons,* 245 S. C. 493, 141 S. E. 2d 342 (1965), an action in tort for false imprisonment, a detail of ten game wardens stationed themselves in a certain area, maintaining contact by radio. One or more of them saw the plaintiff illegally hunting. The information was put on the radio and the plaintiff was arrested by one of the wardens who received the information but had not seen the misdemeanor committed. The court held that the arrest was valid, saying, 141 S. E. 2d 346, "* * * an act taking place within the view of one officer was in legal effect within the view of the other cooperating officers * * *".

without trespassing, entered the premises and what he observed was sufficient probable cause for him to believe that the misdemeanor was being committed in his presence by the defendant. The detail of policemen entered, were given an account by the officer of what he had seen and the sergeant in charge of the detail arrested the defendant. The Court said, page 540:

> "The crime of which the traverser was accused is a misdemeanor, which, as has been seen, was committed in the presence or view of one of a detail of police officers, and by him forthwith communicated to the detail as soon as they entered the store room. It was therefore immaterial which of the officers of the detail placed the traverser under arrest".

We think it a proper extension of the rationale of *Silverstein* that when a misdemeanor is committed in the presence of a police officer and information is promptly placed on the police radio that the misdemeanor has been committed and a description of the misdemeanant given, as was done here, the arrest of the misdemeanant by another police officer within a reasonable time of the receipt of the broadcast information is valid. We feel that if a member of the police team in a felony offense need know nothing about the probable cause within the knowledge of another member of the police team in order to make a valid arrest upon receipt of a "lookout" from a responsible source, *Farrow v. State, supra,* a member of the police team may arrest for a misdemeanor committed in the presence of another member of the police team upon receipt of a "lookout" from a like source that the misdemeanor has been committed. We do not interpret any prior decision in this State as precluding our holding and think it advisable for the proper administration of justice. Our ruling in no way authorizes an arrest for a misdemeanor not committed in the presence or view of a peace officer. We are aware that the Court of Appeals has stated that only by legislative and not by judicial action may warrantless arrests for misdemeanors be made as permitted for felonies—upon probable cause to believe that the offense has been committed, whether or not in a peace officer's presence or view. We hold that the arrest of the appellant was valid.

## THE SEARCH

As the arrest of the appellant was valid, the search of his person incident to the arrest was reasonable and the evidence seized by such search was admissible. *Speaks v. State,* 3 Md. App. 371, 376. The registration card to the Cadillac was seized by continuation of the search of the appellant when he was taken, shortly after his arrest, to the scene of the crime. The continuation of the search then as incident to the arrest and the seizure of the registration card at that time was not unreasonable. See *Leatherberry v. State,* 4 Md. App. 300. The attention of the police was directed to the Cadillac automobile parked at the scene of the crime by the information on the registration card found on him. As the registration card properly came into the possession of the police, the connection of the appellant with the automobile as shown by the card could be properly received in evidence. The physical presence of the automobile was not in any event ascertained by a search; it was there for all to see. The bolt cutters were in plain view in the car and were seen by the police without a trespass or search. Thus, testimony as to them was proper. In the facts and circumstances we feel that the receiving of evidence in the presence of the jury to determine the legality of the arrest, the initial admission of the challenged evidence and its ultimate exclusion do not require reversal of the judgments. The appellant received more than that to which he was entitled by the ultimate exclusion of the evidence. See *Watts v. State,* 3 Md. App. 454.

We hold that there was no error in the denial of the motions for a mistrial.

## THE SUFFICIENCY OF THE EVIDENCE

### The Storehouse Breaking

The appellant does not argue in his brief that the evidence was not sufficient to show a breaking of the storehouse.[14] He

---

14. The assistant terminal manager of the company whose storehouse was broken testified that the office business hours terminated at 7:00 P.M. on 2 July 1965 at which time the office area in the building and the safe were secured. The operation of the business other than the office functions terminated for the weekend at 9:00 A.M. on 3 July at which time it was standard procedure normally

urges, however, that there was no evidence to show that the appellant took anything and that since $24,000 in merchandise had been stolen it could not have been taken by the appellant who was found on the premises and fled when seen by the police. He asserts that this showed a prior breaking by others rather than by him. Therefore his criminal agency was not proved. The $24,000 in merchandise was apparently stolen from the trailer trucks parked within the fenced area outside the storehouse, but there was testimony that either $1172 or $1171 in cash, checks and vouchers, belonging to the company was in the office safe at the time it was locked, although the assistant terminal manager was unable to state the exact amount of cash. And there was evidence that $384.76 in cash was in the storehouse in a cigar box.[15] "In order to prove felonious intent under §32 of Art. 27, Code, it is not necessary to prove any goods were taken. The actual intention at the time of the breaking is controlling, not whether any goods of value were found and stolen, and the intention may be inferred from the circumstances". *O'Brien v. State,* 1 Md. App. 94, 97. "[O]n a charge of breaking with intent to steal goods of a designated value, it is only necessary to sustain a conviction that the evidence permits the trier of facts reasonably to infer that the accused intended to take goods of that value or more * * *. The amount or value of what is intended to be stolen is often a matter of inference". *Mercer v. State,* 237 Md. 479, 485. Under the circumstances in which the appellant was found by the police on the premises and fled the scene, we think that the jury could find beyond a reasonable doubt that he participated in the breaking of the storehouse. We further think that the evidence

---

followed "to seal all trucks and lock all gates and all overhead doors". On 5 July, on going to the premises upon being notified of the breaking, he observed that the fence surrounding the area, the trailers in the storehouse area, the storehouse, the office in the storehouse and the safe in the office had been broken. The police observed these breakings and tools on the floor by the safe on 4 July.

15. There was no evidence as to the amount of the inventory in the storehouse at the time of the breaking. The assistant terminal manager said, "There is merchandise that comes in daily and moves out the next day * * * We are in the motor freight business".

permitted the jury reasonably to infer that he intended to take goods of the value of $100 or more. We cannot say that there was no legally sufficient evidence or rational inferences therefrom on which the jury could find the appellant guilty beyond a reasonable doubt. *Agresti v. State,* 2 Md. App. 278.

*The Larceny*

The appellant was convicted of grand larceny under a count in the indictment presenting that he did feloniously steal $341.72 current money, twelve Manhattan shirts of the value of $60, two cases of Green Lawn Gin of the value of $71.32, one bathroom rug of the value of $5.00 and one bathroom rug of the value of $2.00, being the moneys and goods of "the customers of Cochrane Transportation Co., Inc., under the care and control of said Cochrane Transportation Co., Inc., a body corporate, bailee". The record is devoid of any evidence that shirts or rugs were stolen. There was evidence that two cases of gin were found by the officers near a hole cut in the fence surrounding the storehouse area and that the company "freighted" gin but there was no evidence that the gin so found was owned by the customers of the company and held by it as bailee and no evidence of its market value. The assistant terminal manager testified that $1172 in cash, checks and vouchers, (he later gave the amount as $1171) was in the office safe, but he could not give the amount of cash or current money represented in that total. Nor is it clear from the evidence that the cash, checks and vouchers were missing from the safe on 4 July when the police discovered the breaking or on 5 July when the assistant terminal manager arrived on the scene. When one of the police officers first entered the premises he saw a cigar box on a 50 gallon drum near a bay door inside the storehouse. He opened the box and it contained $384.76.[16] It was not the same box seen near the safe. The assistant terminal manager said that "salvage money" was kept in a cigar box but he did not identify either cigar box found as that in which the money was kept

---

16. The $384.76 and the $205 found on the appellant were given by the police to representatives of the company. By the ultimate ruling of the court the jury was precluded from considering the $205 found on the appellant.

and there was no evidence as to how much money was in the box at the time of the breaking or what amount was missing therefrom, if any, or whether the "salvage money" was locked in the safe.

Larceny is the wrongful and fraudulent taking and removal of personal property from the possession of another against his will, with intent to deprive the person entitled thereto of his ownership therein. *Hochheimer, Law of Crimes and Criminal Procedure,* 1st Ed. § 690, p. 409; *Fletcher v. State,* 231 Md. 190. The appellant was charged with grand larceny — the taking of current money and goods of the value of $100 or more. There was no evidence sufficient to show a taking of the money and goods as charged. It was not shown that the gin was ever in the storehouse or to whom it belonged or what its market value was. There was no evidence at all with regard to the shirts and rugs. It was not proved that there was current money in the amount of $100 or more in the safe even if it be assumed that money was stolen therefrom. It was not shown that other current money was stolen. There was testimony that $24,000 in merchandise was taken from some 20 trailer trucks but this merchandise was in no way identified so as to connect it with the goods charged in the indictment nor was its ownership proved. We find that there was no legally sufficient evidence or rational inferences therefrom on which the jury could find the appellant guilty of grand larceny as charged beyond a reasonable doubt. In view of our holding we do not consider additional questions with respect to ownership of the money and goods. But see *Anderson v. State,* 3 Md. App. 85.

### IMPEACHMENT OF DEFENSE WITNESSES

The general rule is that evidence of a conviction of a crime is permitted to impeach the credibility of a witness on cross-examination in the trial courts discretion. *Mason v. State,* 242 Md. 707, 710. Such evidence need not be restricted to infamous crimes or those involving moral turpitude, provided the violation of law may have some tendency to show that the witness is not to be believed under oath. "In such instances the exercise of discretion by the trial judge will not be interfered with on appeal unless the fact of the prior conviction is clearly ir-

relevant". *Cousins v. State,* 230 Md. 2, 4; Md. Code (1965 Repl. Vol.) Art. 35, § 10. See *McLaughlin v. State,* 3 Md. App. 515. The general rule applies where the defendant is a witness in his own behalf. "[H]e thereby puts his character in issue, and may be asked on cross-examination if he has been convicted of crime". *Taylor v. State,* 226 Md. 561, 567, citing *Burgess v. State,* 161 Md. 162, 169.

In the instant case the appellant testified in his own behalf and on cross-examination was asked if he had ever been convicted of the crime of grand larceny. He replied that he had and it was brought out on further questioning that he was convicted in January 1966 and that he was presently serving a three year sentence for that conviction at Lorton Reformatory where he had been incarcerated about 10 months. We think the prior conviction of grand larceny was clearly relevant on the issue of the appellant's credibility and find no abuse of the trial judge's discretion in admitting the testimony now challenged.

Anthony Williams, a witness for the appellant, on direct examination was asked his address by defense counsel and replied that it was "3536 Park Place, Northwest". He was cross-examined as to his address and it was elicited that his current address was actually 200 19th Street, Northwest, the "D. C. jail". The appellant complains that the matter was not relevant and that the witness was obliged to repeat five times that his address was the jail. We see no prejudicial error requiring reversal. We cannot say that the trial judge abused his discretion in permitting the question and answer on cross-examination which showed that the correct address was other than that the witness had previously given. And we think it clear from the record that the witness was made to repeat that the address was that of a jail only because his answer could not be at first heard by the court or State's Attorney.

> *Judgment affirmed as to storehouse breaking (1st count of the indictment); judgment reversed as to larceny (2nd count of the indictment); remanded for a new trial under the second count.*