940 F.2d 652
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Kenneth W. MELTON, Sharon J. Melton, Plaintiffs-Appellants,
v.
Michelle R. DERMOTA, Neil L. Benson, Anne Arundel County,
Defendants-Appellees.
 No. 90-1530.
 United States Court of Appeals, Fourth Circuit.
 Argued May 8, 1991.
Decided Aug. 6, 1991.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Alexander Harvey II, Senior District Judge. (CA-89-2926-H)
 David P. Olslund, Park Legal Services, P.C., Baltimore, Md., for appellants.
 John Francis Breads, Jr., Assistant County Attorney, Anne Arundel County Office of Law, Annapolis, Md. (Argued), for appellees; Mark A. Lechowicz, Lechowicz & Davis, Glen Burnie, Md., on brief.
 D.Md.
 AFFIRMED.
 Before PHILLIPS, Circuit Judge, ELIZABETH V. HALLANAN, United States District Judge for the Southern District of West Virginia, sitting by designation, and CLAUDE M. HILTON, United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Plaintiffs-appellants Kenneth W. Melton and Sharon J. Melton appeal from the district court's grant of summary judgment for the Defendants-appellees Michelle R. Dermota, Officer Neil Benson, and Anne Arundel County in this 42 U.S.C. Sec. 1983 suit.
 
 I.
 
 2
 On August 1, 1987, shortly before 12:25 p.m., Defendant Michelle Dermota drove to a laundromat located in the Linthicum-Shipley Shopping Center, intending to wash her comforter. At approximately the same time, Plaintiff Kenneth Melton arrived at the laundromat to do his family's laundry and parked his pick-up truck between Defendant Dermota's car and a trash dumpster. The vehicles were positioned so that Melton's passenger door was adjacent to Dermota's driver's door.
 
 
 3
 While loading her comforter into a washer Dermota noticed that Melton was staring at her. Dermota decided to go home while her comforter was washing. While exiting the laundromat, she noticed that Melton, who had exited just moments before, was sitting in the passenger side of his truck. Melton, who was dressed in thigh-length jean shorts, a T-shirt, and tennis shoes, had his left foot inside the truck and his right foot hanging out the passenger door. Dermota alleges that while she was putting her dog in the passenger side of her car, Melton who had his shorts' leg pulled up exposed himself to her.
 
 
 4
 Frightened, she returned to the laundromat and asked a patron, Jonathan Simms, to escort her to her car claiming she was being harassed. Simms agreed to escort her and when they reached her car Dermota entered through her passenger door, locked her doors, and drove off.
 
 
 5
 Rather than going home as initially planned, Dermota drove immediately to her mother's house and recited what had occurred. Her mother then called the police who informed her that a car would be dispatched to the shopping center and that Dermota should meet the officer there. Officer Benson, a thirteen year veteran with the Anne Arundel County Police Department, was dispatched to the scene and met Dermota as he was entering the shopping center. Dermota who appeared visibly upset explained to Benson what had happened and described Melton as a white male, in his 20's, dark hair, dark mustache, approximately six feet tall, medium build, wearing a dark blue T-shirt, thigh-length blue jeans and tennis shoes. She then stated that she had last seen Melton in the vicinity of the laundromat and that his pick-up truck was parked nearby.
 
 
 6
 Officer Benson then drove to the laundromat and located the pickup truck which was unoccupied. By calling in the license plate number he was able to obtain Melton's full name. Benson then entered the laundromat where he observed an individual matching the description given by Dermota. The individual was in fact Melton. Benson then asked Melton to step outside and he did so. Benson then told Melton that he was investigating an indecent exposure which had occurred and that Melton fit the suspect's description. Melton denied committing the act. After advising Melton of his Miranda rights and further explaining Dermota's complaint, Benson asked Melton to sit in the passenger side of his truck in the manner which Dermota had described. Melton complied and due to the length of his shorts, Benson was satisfied that no accidental exposure had occurred. Benson also interviewed Simms who corroborated escorting Dermota to her car, although he could provide no further information. Based on this investigation, Benson arrested Melton without an arrest warrant.
 
 
 7
 After Benson presented these facts to a district court commissioner, the commissioner issued a charging document against Melton for indecent exposure. Melton was tried before the Honorable George M. Taylor of the District Court for Anne Arundel County on February 18, 1988. At the conclusion of the prosecution's case, Melton's counsel moved for judgment of acquittal. Judge Taylor denied the motion and after the close of all evidence found Melton guilty of the offense. Melton appealed his conviction to the Circuit Court for Anne Arundel County and elected trial by jury. The Honorable Robert Heise presided over the jury trial which began on December 14, 1988. Melton's counsel once again moved for judgment of acquittal after the completion of the prosecution's case-in-chief and once again the motion was denied. Such motion was also renewed after the close of all evidence and again denied. The case was then submitted to a jury which found Melton not guilty.
 
 
 8
 After his acquittal, Melton and his wife[1] brought this civil suit in the United States District Court for the District of Maryland. Plaintiffs' complaint alleged violations of their Fourth and Fourteenth Amendment rights and sought relief pursuant to 42 U.S.C. Sec. 1983. The complaint also included two pendent state law claims for wrongful arrest and malicious prosecution. All claims were based on Melton's August 1, 1987, arrest and subsequent prosecution.
 
 
 9
 After the completion of discovery, the Defendants moved for summary judgment. Defendants' motions were heard by the Honorable Alexander Harvey, II, Chief United States District Judge, on August 3, 1990. On August 20, 1990, Chief Judge Harvey entered his memorandum opinion and order granting all motions for summary judgment and declining to exercise pendent jurisdiction over the Plaintiffs' remaining state law claims. On September 13, 1990, the Plaintiffs filed their Notice of Appeal.
 
 II.
 
 10
 On appeal, a district court's grant of summary judgment is reviewed de novo. Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir.1988). In discussing the standard for granting summary judgment, the United States Supreme Court has held that:
 
 
 11
 the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.
 
 
 12
 Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).
 
 
 13
 In assessing a motion for summary judgment, all justifiable inferences must be drawn in favor of the nonmoving party for "[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court "must perform a dual inquiry into the genuineness and materiality of any purported factual issues." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir.1985).
 
 
 14
 "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. While "[g]enuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." Ross, 759 F.2d at 364; accord Goldberg v. B. Green & Co., Inc., 836 F.2d 845, 848 (4th Cir.1988); Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir.1987); Ash v. United Parcel Service, 800 F.2d 409, 411-12 (4th Cir.1987).
 
 
 15
 After reviewing all evidence regarding any alleged genuine issue of material fact:
 
 
 16
 [t]he judge must ask himself not whether he thinks the evidence unmistakably favored one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; it must be evidence on which the jury could reasonably find for the plaintiffs.
 
 
 17
 Anderson, 477 U.S. at 252. Where no genuine issue of material fact exists, this Circuit has noted "the affirmative obligation of the trial judge to prevent 'factually unsupported claims and defenses' from proceeding to trial." Felty, 818 F.2d at 1128 (quoting Celotex Corp., 477 U.S. at 323-24).
 
 
 18
 We will now address the lower court's grant of summary judgment in regard to each defendant.
 
 A.
 
 19
 Melton alleges that Officer Benson violated his Fourth and Fourteenth Amendments rights by arresting him without a warrant and without probable cause for a misdemeanor which was not committed in the officer's presence. Melton contends that Officer Benson could not have had probable cause to arrest him since Dermota was the only witness to an alleged offense which he vehemently denied committing and upon which there was not sufficient evidence to support her version of the events. He also contends that the lack of probable cause is evidenced by his subsequent acquittal.
 
 
 20
 We begin our analysis by noting that unfortunately, it is a fact that no "system of justice" is perfect regardless of how laudable its purposes and designs may be. As a result of this inherent imperfection, innocent people are sometimes accused of a crime. We may only hope that in such situations our imperfect system, perhaps despite itself, will ultimately lead to their acquittal. There is little doubt, however, that such people may be deeply chagrined over their experience and despite their vindication will wish to seek retribution against those who charged and prosecuted them.[2] It is also clear, however, that whom there was insufficient evidence to convict.
 
 
 21
 Sec. 1983 was not designed as a "route for retribution" for every person wrongly accused of a crime. Rather Sec. 1983 is designed as a means to allow individuals redress for deprivations of a federal constitutional or statutory magnitude.
 
 
 22
 The essential elements to be proved in any section 1983 action are (1) that the defendant was acting under color of state law in the actions complained of; and (2) that the defendant deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States. Briley v. State of California, 564 F.2d 849, 853 (9th Cir.1977). If there is no violation of a federal right, there is no basis for a section 1983 action and no answer to a plea by the public officer of qualified immunity.
 
 
 23
 Clark v. Link, 855 F.2d 156, 161 (4th Cir.1988); accord Screws v. United States, 325 U.S. 91, 108 (1945); Street v. Surdyka, 492 F.2d 368, 371 (4th Cir.1974).
 
 
 24
 It is thus clear that conduct which violates state law will not be sufficient to maintain a Sec. 1983 action unless such conduct also violates federal constitutional or statutory law.[3] In Surdyka, this Court was previously faced with the argument that a warrantless arrest for an alleged misdemeanor committed outside the police officer's presence constituted a federal constitutional violation. The Surdyka Court noted that:
 
 
 25
 Maryland, like many other states, follows the common law rules on warrantless arrest. An officer needs no warrant to make an arrest if he has probable cause to believe a felony has been committed, but probable cause is not enough to authorize warrantless arrest for a misdemeanor. The misdemeanor must also have been committed in the officer's presence. Robinson v. State, 4 Md.App. 515, 243 A.2d 879 (1968). If Officer Surdyka violated this Maryland law, he may be liable to the plaintiff in an action under the common law of false arrest or false imprisonment. But section 1983 does not provide a remedy for common law torts. Instead it creates a federal cause of action against those acting under color of state law who cause a 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. Sec. 1983. In many cases the same conduct will violate both state law and the federal Constitution, but certainly not all violations of state law rise to the level of constitutional tort.
 
 
 26
 Id. at 370-71.
 
 The Court then held that:
 
 27
 The constitutional restrictions on arrest are derived from the fourth amendment's prohibitions of unreasonable seizures.... We do not think the fourth amendment should now be interpreted to prohibit warrantless arrests for misdemeanors committed outside an officer's presence. The differences between felonies and misdemeanors is no longer as significant as it was at common law.... The fourth amendment protects individuals from unfounded arrests by requiring reasonable grounds to believe a crime has been committed. The states are free to impose greater restrictions on arrests, but their citizens do not thereby acquire a greater federal right. Accordingly, there is no cause of action for 'false arrest' under section 1983 unless the arresting officer lacked probable cause.
 
 
 28
 Id. at 371-73; see also Ralph v. Pepersack, 335 F.2d 128, 136 (4th Cir.1964), cert. denied, 380 U.S. 925 (1965).
 
 
 29
 This Court's ruling in Surdyka is thus obviously controlling on Melton's argument that he has suffered a deprivation of a federal right due to his warrantless arrest by Officer Benson for alleged indecent exposure which was not committed in Benson's presence. See Busby v. Crown Supply, Inc., 896 F.2d 833, 840-41 (4th Cir.1990) ("In this circuit ... customarily a panel considers itself bound by the prior decision of another panel, absent an en banc overruling or a superseding contrary decision of the Supreme Court."). Accordingly, we find that the district court did not err in concluding that Melton did not suffer a violation of his federal constitutional rights due to the mere fact that he was arrested without a warrant by Officer Benson for an alleged misdemeanor committed outside of Benson's presence.
 
 
 30
 We must next decide, however, whether the district court erred in finding that Officer Benson had probable cause to arrest Melton, for as made clear in Surdyka a cause of action for "false arrest" under Sec. 1983 may exist where the arresting officer lacked probable cause. Id. at 372-73. Should we determine that the district court erred in finding that Officer Benson had probable cause we must then decide whether Officer Benson is qualifiedly immune from suit under Sec. 1983.[4]
 
 
 31
 In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.
 
 
 32
 Officer would have concluded that [probable cause existed]; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." Malley v. Briggs, 475 U.S. 335, 341 (1986). Additionally, "an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." Id.
 
 
 33
 ... Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed.
 
 
 34
 Brinegar v. United States, 338 U.S. 160, 175-76 (1949) (quoting Carroll v. United States, 267 U.S. 132, 162 (1925)); accord Beck v. Ohio, 379 U.S. 89, 91 (1964).
 
 
 35
 The parties do not disagree over the state of the evidence but rather over what quantum of evidence is sufficient to establish probable cause in a case of alleged indecent exposure. We note that the fact that Melton was subsequently acquitted has no bearing on whether probable cause existed for his arrest at the time thereof. The Supreme Court has noted that "[t]here is a large difference between [proving guilt in a criminal case and showing probable cause for an arrest or search], as well as between the tribunals which determine them, and therefore a like difference in the quanta and modes of proof required to establish them." Brinegar, 338 U.S. at 173; accord Claiborne v. Cahalen, 636 F.Supp. 1271, 1276 (D.Md.1986).
 
 
 36
 As noted by the court below, at the time of Benson's arrival on the scene Dermota described in detail what allegedly had transpired, and Officer Benson had no reason to doubt her veracity or credibility. He then conducted an investigation of the incident, including confronting Melton with Dermota's story and questioning him thereon and interviewing Simms who confirmed that Dermota had asked him to escort her to her car because she was being harassed. After convincing himself that no exposure had been accidental by viewing Melton sitting in his truck in the pose described by Dermota, Officer Benson determined that probable cause existed for Melton's arrest.
 
 
 37
 We agree with the district court that based on the totality of the circumstances, probable cause existed for Melton's arrest on August 1, 1987, as a matter of law. Accordingly, since no deprivation of Melton's federal constitutional rights occurred due to his arrest, the district court was correct in granting summary judgment on Officer Benson's behalf in regard to Melton's Sec. 1983 claims.[5] We need not a court may make such determination where there is no genuine issue of therefore determine whether Officer Benson would be qualifiedly immune from suit under Sec. 1983 had he lacked probable cause for Melton's arrest.
 
 B.
 
 38
 Because we have held that Officer Benson had probable cause to arrest Melton, it is clear that the district court was also correct in granting summary judgment on Anne Arundel County's behalf as to Melton's Sec. 1983 claims. The Supreme Court has held that:
 
 
 39
 a local government may not be sued under Sec. 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts injury that the government as an entity is responsible under Sec. 1983.
 
 
 40
 Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 694 (1978). Clearly, since Melton suffered no constitutional deprivation due to his arrest by Officer Benson, there is no basis for liability against Anne Arundel County under Sec. 1983, regardless of whether Officer Benson was executing a custom or policy of the County in arresting Melton.
 
 
 41
 We also note our agreement with the district court's finding that Anne Arundel County would be entitled to summary judgment even if Officer Benson's arrest of Melton had constituted a deprivation of Melton's federal constitutional rights for the record is entirely devoid of any evidence which would create a genuine issue of material fact concerning the existence of a policy or custom attributable to the County which was the proximate cause of Melton's "injury." See Spell v. McDaniel, 824 F.2d 1380, 1386-88 (4th Cir.1987), cert. denied, 484 U.S. 1027 (1988).
 
 
 42
 Accordingly, summary judgment was properly granted in Anne Arundel County's favor.
 
 C.
 
 43
 Melton alleges that Dermota, a private individual, conspired with Officer Benson to violate his constitutional rights and thus is also liable under Sec. 1983. Again, because we have found that Officer Benson had probable cause to arrest Melton and therefore that Melton suffered no federal constitutional deprivation, it is clear that the district court was correct in granting summary judgment on Dermota's behalf.
 
 
 44
 Alternatively, the district court was also correct in noting that Dermota would be entitled to summary judgment even if Officer Benson had lacked probable cause to arrest Melton for the record is also barren of any evidence upon which a jury could reasonably find Dermota liable under Sec. 1983. While a private party who has jointly participated or conspired with a state actor in violating an individual's federal constitutional rights may be found liable under Sec. 1983, Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970), mere conclusory allegations or naked assertions are insufficient to establish such liability. Doe v. Smith, 704 F.Supp. 1177, 1188 (S.D.N.Y.1988).
 
 
 45
 Certainly, an eye-witness's mere reporting of an incident to the police and testifying thereon in court is insufficient to constitute such liability. As stated by the Fifth Circuit, "[u]nless he were an eyewitness, a police officer could not make any arrest if he could not rely on information provided by citizens who witnessed the events. Such reliance does not convert the informing party into a state actor." Hernandez v. Schwegmann Bros. Giant Supermarkets, Inc., 673 F.2d 771, 772 (5th Cir.1982). Or as otherwise stated, "[p]roviding information to the state and pressing for state action against an individual, without more, cannot suffice to make a private entity liable under section 1983 as a state actor." Manax v. McNamara, 842 F.2d 808, 813 (5th Cir.1988).
 
 
 46
 As noted by the district court, the record is entirely devoid of any evidence that Dermota was acquainted with Melton prior to the incident or bore him any personal animosity, let alone that she conspired with Officer Benson to deprive him of his federal constitutional rights. We find Melton's attempt to establish a motive on Dermota's part by alleging that she was spiteful of men in general and seeking revenge against the male gender because she was suffering marital problems to be both outlandish and frivolous.
 
 
 47
 Accordingly, the district court was correct in granting summary judgment on Dermota's behalf.
 
 III.
 
 48
 After granting summary judgment for the Defendants on the Plaintiffs' Sec. 1983 claims, the district court relying on United Mine Workers v. Gibbs, 383 U.S. 715 (1966), refused to exercise pendent jurisdiction over the Plaintiffs' state law claims for false arrest and malicious prosecution. As stated in Gibbs:
 
 
 49
 [i]t has been consistently recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right.... Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.
 
 
 50
 Id. at 726; accord Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc., 840 F.2d 236, 243 (4th Cir.1988); International Primate Protection League v. Institute for Behavioral Research, Inc., 799 F.2d 934, 940-41 (4th Cir.1986), cert. denied, 481 U.S. 1004 (1987); Coastal Neuro-Psychiatric Associates, P.A. v. Onslow Memorial Hosp., Inc., 795 F.2d 340, 342 (4th Cir.1986); Kavit v. A.L. Stamm & Co., 491 F.2d 1176, 1180 (2nd Cir.1974). This discretion remains in the trial court even in those cases where the state statute of limitations on such claims may have run during the pendency of the federal action. Ottensmeyer v. Chesapeake & Potomac Telephone Co. of Maryland, 756 F.2d 986, 994 n. 14 (4th Cir.1985).
 
 
 51
 We find no abuse of discretion on the trial judge's part in this regard and accordingly believe that his dismissal of the Plaintiffs' state law claims should be affirmed.
 
 IV.
 
 52
 For the foregoing reasons, we believe that the district court's grant of summary judgment for the Defendants as to the Plaintiffs' Sec. 1983 claims and dismissal of the Plaintiffs' remaining state law claims should be affirmed.
 
 
 53
 AFFIRMED.
 
 
 
 [1]
 The district court was obviously correct in dismissing Plaintiff Sharon Melton's Sec. 1983 action for failure to state a claim thereunder against any of the Defendants. She was not present on August 1, 1987, during her husband's arrest and the record is entirely devoid of any evidence which would establish that she has suffered any federal constitutional deprivation
 
 
 [2]
 Of course only Melton and Dermota will ever know for certain whether Melton is one of those falsely accused or simply one of those for
 
 
 [3]
 Relying on Gryger v. Burke, 334 U.S. 728 (1948), this Circuit has rejected contentions "that a violation of state law will constitute a violation of substantive federal due process." Clark, 855 F.2d at 163. In Gryger, the Supreme Court reasoned that "[w]e cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question." Gryger, 334 U.S. at 731
 
 
 [4]
 The doctrine of qualified immunity provides that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); accord Anderson v. Creighton, 483 U.S. 635, 638-39 (1987); Mitchell v. Forsyth, 472 U.S. 511, 530 (1985); Clark, 855 F.2d at 160. The doctrine is designed to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." Harlow, 457 U.S. at 818. The Supreme Court has stated that "[police officers] will not be immune if, on an objective basis, it is obvious that no reasonably competent
 
 
 [5]
 While the existence of probable cause is normally a question for the jury, material fact. Garris v. Rowland, 678 F.2d 1264, 1270 (5th Cir.), cert. denied, 459 U.S. 864 (1982)