**Otis ST. JOHN, Plaintiff in Error,**

**v.**

**STATE of Tennessee, Defendant in Error.**

Court of Criminal Appeals of Tennessee.

Oct. 10, 1972.

Certiorari Denied by Supreme Court
Feb. 20, 1973.

Robert L. Dobbs, Memphis, for plaintiff in error.

David M. Pack, Atty. Gen., Robert H. Roberts, Asst. Atty. Gen., Nashville, Don

A. Dino, Asst. Dist. Atty. Gen., Memphis, for defendant in error.

O'BRIEN, Judge.

## OPINION

The defendant was convicted by a jury for the offense of carrying a pistol and received a fine of $50.00 on his conviction. He has properly appealed to this Court and makes five assignments of error.

Assignments I and II attack the weight and sufficiency of the evidence, while Assignment V charges error to the trial court in refusing to grant a motion for a directed verdict. Assignments III and IV contend ·that the trial court erred in holding that a search was legal after finding that defendant's arrest was illegal, and that the convicting evidence admitted by the Court was the product of an illegal search and seizure. We first consider Assignments of Error III and IV.

On June 7th, 1970, defendant, driving a Ford Mustang automobile, accompanied by two passengers, was traveling north on Interstate Highway 55, returning from Hernando, Mississippi.

An off-duty city of Hernando police officer, who was also a special deputy in DeSoto County had also been traveling toward Memphis, Tennessee, when he observed a one vehicle accident on the interstate and stopped to investigate. After having rendered emergency assistance to the accident victim, he was in the process of resuming his journey toward Memphis when he observed defendant's Mustang automobile pass at a high rate of speed. He followed the vehicle and kept it under observation, and concluded to his own satisfaction that the vehicle was being operated in a reckless manner. At one point, before reaching the Mississippi-Tennessee State line, he drew alongside defendant's automobile and admonished him to slow down. Defendant did slow down and drove for some time behind the Mississippi

officer's vehicle which had no identifying law enforcement indicia apparent. According to this witness's testimony at that time both vehicles were exceeding the Mississippi speed limit which is fixed at 70 miles per hour. They crossed the State line and at that time the Mustang automobile, operated by defendant, passed the other vehicle, and according to the testimony took off at a high rate of speed, darting in and out of traffic. The Mississippi officer took up the pursuit, and by use of a citizens band radio in his car, the Shelby County Sheriff's Office was notified of the circumstances. The witness followed up the interstate, to what is described as the Lamar Exit, keeping the Mustang automobile under observation until it stopped at a motel on Lamar Avenue. He states that he remained there, some distance from the motel, keeping the car and its passengers under observation, waiting for the Memphis authorities. Apparently the Memphis city police were notified through the sheriff's office, and arrived at the scene, just as defendant was preparing to leave the motel. The witness states that he made no attempt to arrest the defendant; that no crime was committed in his presence, other than driving in a reckless manner, and that he only acted as a citizen observing a man driving in a reckless manner who was a hazard on the road.

The Memphis police officer involved testified that he, and a fellow officer, were on duty on the date in question. They received a call on the patrol car radio that the Mississippi Highway Patrol was chasing a car from Mississippi toward Tennessee; they followed the direction of the pursuit via their radio and being in the area of the motel where the vehicle was reported to have stopped they proceeded there. After meeting the witness who had transmitted the radio report, who pointed out the Mustang car sitting in the motel parking lot, the officer went over to the car, told the driver he was under arrest for reckless driving and asked him to step out of the car. When Mr. St. John stepped

out the officer testified he observed the handle of a pistol sticking out from under the front seat of the car. He picked up the pistol and found it to be a fully loaded .45. Defendant was then advised he was also being charged with carrying a pistol. On cross-examination the officer testified that he did not observe any unlawful act in his presence, nor did he have any knowledge of any unlawful act on the part of defendant. That the basis for the arrest was the information he had received from the Mississippi officer that defendant was guilty of reckless driving. The foregoing testimony was developed at a lengthy jury out hearing on a motion to suppress the evidence. The trial court correctly ruled that the arrest for reckless driving was illegal, but held that the discovery of the pistol was the result of the police officer's investigation, and not the result of the original arrest, and therefore the weapon was admissible in evidence. We think the learned trial judge erred on this point.

Under T.C.A. Sec. 40–803 an officer may arrest a person for (1) A public offense committed or a breach of the peace threatened in his presence; (2) When the person has committed a felony, though not in his presence; (3) When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it; (4) On a charge made, upon reasonable cause, of the commission of a felony by the person arrested. The grounds for arrest by a private person are set forth in T.C.A. Sec. 40–816. None of the elements required for a lawful arrest in this case were presented by the evidence. Robertson v. State, 184 Tenn. 277, 198 S.W.2d 633; Epps v. State, 185 Tenn. 226, 205 S.W.2d 4; Carroll v. State, 189 Tenn. 351, 225 S.W.2d 532; Murphy v. State, 194 Tenn. 698, 254 S.W.2d 979; Chadwick v. State, 1 Tenn.Cr.App. 72, 429 S.W.2d 135.

There is no question, under the evidence, that defendant was under arrest by the police officer before he removed himself from his vehicle. See Robertson v. State, supra. The State suggests that the plain view doctrine prevails in this case. The evidence does not sustain this position. Defendant was arrested illegally and improperly and the offending pistol was not brought into view until he was directed to get out of his vehicle by the police officer. In Sneed v. State, 221 Tenn. 6, 423 S.W.2d 857, cited by the State, it was conceded that the removal of a rifle from the defendant's car was the result of an illegal search, and our Supreme Court found this reasoning to be erroneous. In that case the police officers had a warrant for defendant's arrest; they found his car parked in front of a hospital in a public parking area; a police officer looked in the car to see if anybody was in it. When he looked in, he was standing outside of the car, beside it, and he saw a pump rifle. The car door on the opposite side was open. The Supreme Court held that when the officer walked up to Sneed's car, the evidence was plainly visible when he looked in, and stated the rule to be that constitutional rights are not violated when a law officer, without any trespass against a defendant, and while he is at a place where he has a right to be, looks and sees evidence against a defendant which is plainly visible. The facts of this case do not conform to that rule.

In Hughes v. State, 145 Tenn. 544, 238 S.W. 588, on the question of whether a defendant was in the commission of an offense in the presence of officers, so as to justify an arrest, it was held that it would not justify an arrest merely because a defendant was actually committing a separate offense when an arrest was effected, and by way of illustration, said as follows:

> "If a person has in his possession a concealed weapon, if he exposes it in the presence of an officer or uses it, and the officer sees it, then the officer may lawfully arrest him without a warrant. A person may have a concealed weapon upon his person, but if there is no evi-

dence of that fact apparent to an officer his arrest would be unwarranted."

The question of the right of an officer to arrest without a warrant is clearly set forth in Pesterfield v. Vickers et al., 43 Tenn. 205; Dittberner v. State, 155 Tenn. 102, 291 S.W. 839.

In this case defendant was illegally arrested for a misdemeanor offense. There was no such unusual conduct on his part which would lead the police officer to reasonably conclude that any more serious criminal activity was afoot, or that the person with whom he was dealing might be armed or dangerous as a result of which he would be entitled to conduct a limited search of the person of defendant. Terry v. State of Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. The officer had no information, nor did he perceive in any other manner, that defendant was involved in a felony offense. Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142. And had it not been for the illegal actions of the police officer in placing the defendant under arrest and removing him from his vehicle for a "pat down" the evidence would not have come to light. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. The observation of the incriminating evidence was not inadvertent within the exceptions noted in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564.

While the initiative of the police officer in investigating the complaint which he had received was laudable, it is obvious from the evidence in this case that his original investigation did not and could not discover the evidence by which defendant was convicted. Defendant was placed under arrest and removed from his automobile. The officer exceeded the statutory limitations delineated for a misdemeanor offense, and the discovery of the incriminating weapon was the result.

Assignments III and IV are sustained. The other assignments have been examined and considered and in the light of this opinion no further comment is required.

Reversed and remanded.

GALBREATH, and MITCHELL, JJ., concur.

MITCHELL, Judge (dissenting).

I respectfully dissent.

On the occasion in question an officer of the law at Hernando, Mississippi in his car accompanied by his wife about 6:30 P.M. on a Sunday were travelling toward Memphis. As they proceeded on toward Memphis the defendant in his Mustang automobile was discovered driving recklessly in the direction of Memphis at 90 to 100 miles per hour.

The Mississippi officer followed the defendant's Mustang as he continued on into Memphis, and continued to drive recklessly and at high rates of speed. There were two men and one woman in the defendant's car.

The Mississippi officer by radio warned the officers of the law in Memphis about the defendant's reckless driving and kept the defendant's car under observation until it stopped at the Rebel Motel in Memphis. There the Mississippi Officer met the Memphis police and pointed out the defendant's car to them. At that time the defendant's car was on the ramp or apron of the Motel preparing to leave. One of the men in the defendant's car was drunk in the back seat.

The police officers approached the defendant's car and told him he was under arrest for reckless driving.

When the defendant got out of his car the officer saw a .45 caliber automatic pistol sticking out from under the front seat. The officer seized the pistol and arrested the defendant for unlawfully carrying a pistol.

I am of the opinion that there was no search of the defendant's automobile. The officers, upon receiving information from the Mississippi Officer that the defendant had been driving his car in a reckless manner, at excessive rates of speed, and as the officer described it constituted a hazard to the travelling public, had a duty to investigate the matter. Upon observing the defendant's car about to leave the motel and drive out on the street or highway the officers had a duty to prevent further reckless driving by the defendant and to prevent a breach of the peace were not acting in violation of the defendant's constitutional rights when they restrained the defendant and his drunken companion from committing a further breach of the peace. The officer said they pulled in the drive of the Rebel Motel and then got back in their car and backed out and started out again. That they were there three or four minutes before the police came.

The trial judge in his comment on the hearing in the absence of the jury indicated the probability that the Mississippi Officer might have a citizens arrest with the assistance of the Memphis Police.

If, instead of telling the defendant he was under arrest for reckless driving the officer had said to the defendant "I am informed you have been driving recklessly and at excessive speed and your companion here in the back seat is drunk, I want you to get out and let me determine if you are sober before you drive out on the street again." And then the officer saw the pistol. Would that not have been in the proper exercise of his duties as a police officer to prevent breaches of the peace? Suppose instead of telling the defendant he was under arrest, he had asked to see his drivers license, and then saw the pistol.

It is my opinion, in view of the information and identification the Mississippi Officer gave them, together with the fact that the defendant was about to drive out from the motel into a main through-fare, the officers were not acting in violation of the defendant's constitutional rights when they made the investigation of the defendant.

I agree with the opinion of the learned trial judge, that the officer had a right to investigate actions and conditions of the defendant, and that he did not actually make any search of the car but in making the investigation he saw the handles of the pistol in plain view sticking out from under the front seat.

I would affirm the judgment.