**STATE of Tennessee, Appellee,**

v.

**Rodney E. BRYANT, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

June 12, 1984.

Opinion on Petition to Rehear July 25, 1984.

Permission to Appeal Denied by Supreme Court Oct. 1, 1984.

Scott Daniel and D. Russell Thomas, Murfreesboro, for appellant.

William M. Leech, Jr., State Atty. Gen. & Reporter, Kymberly Lynn Anne Hattaway, Asst. State Atty. Gen., Nashville, Charles S. Ramsey; Jr., Dist. Atty. Gen., Kenneth Shelton, Jr., Asst. Dist. Atty. Gen., Manchester, for appellee.

## OPINION

BYERS, Judge.

The defendant pled guilty to a charge of driving while intoxicated and reserved the right to appeal a certified question of law. He was sentenced to eleven months and twenty-nine days in jail, with the right to apply for probation after serving ten consecutive days. The trial judge also imposed a $250.00 fine and prohibited the defendant from driving for one year.

The issue preserved for appeal is whether the initial detention of the defendant was unlawful and whether the evidence of intoxication should therefore have been suppressed. In addition, the defendant challenges the sentence.

The judgment of conviction is affirmed, and the case is remanded for further proceedings.

The defendant seeks to suppress dispositive evidence of his intoxication first on the ground that his initial detention was constitutionally invalid. The issue requires a recital of the facts leading to his arrest. The incident occurred after 11:00 p.m., when State Trooper Savage clocked an oncoming car traveling 110 miles per hour on Interstate 24. The record shows that the officer again checked his radar reading and crossed the median to stop the car approaching in the westbound lane. As he did so, his headlights illuminated the passing vehicle and he was able to identify it as a light-colored Porsche with a spoiler affixed to the rear. The officer turned on his blue lights and called the area Highway Patrol dispatcher to report that he was in pursuit of this vehicle. The officer testified that the speeding vehicle was the only one on the interstate at the time.

Savage pursued the Porsche, reaching speeds of over 100 miles per hour, but was unable to catch up until the car left the interstate on an exit in Manchester. This chase covered two and one-half miles. At the exit, when local traffic interrupted the chase and the trooper lost sight of the car, he again radioed a description of the car and requested assistance. This transmission was directed to the local communications center.

Portions of the transmissions were heard by Officer Kennedy of the local police, who parked his car near the interstate to watch for the Porsche should it return to the interstate. In fact, the car appeared within one minute. Kennedy turned on his blue lights, and the defendant stopped his car several feet onto the I–24 entrance ramp. The officer asked for the defendant's drivers license and asked him to step out of the car.

The trooper had continued on the local highway for a short distance, and as he returned to the intersection, he received word that a local officer had stopped the vehicle. He arrived at the entrance ramp to find the Porsche stopped and the defendant standing beside his car. After some conversation with the defendant, Trooper Savage arrested him on charges of speeding, reckless driving, and driving while intoxicated.

It is not contested that Kennedy observed no unlawful action by the defendant or that the stop was based entirely on Trooper Savage's radio transmission. In fact, Kennedy did not hear the trooper say that the vehicle was speeding, and acted only on the request for assistance and an adequate description of the Porsche.

▮▮▮ Every official restraint upon the liberty of a person is subject to the strictures of the fourth amendment of the United States Constitution, and in this state, of article I, section 7 of the Constitution of Tennessee. Even a brief detention, short of arrest and incarceration, must be based on "articulable facts or inferences from facts," which would support a reasonable conclusion that a crime had been or was about to be committed. *Hughes v. State*, 588 S.W.2d 296, 306 (Tenn.1979). No intrusion based only upon the whim or unsupported hunch of an officer is constitutionally valid, and evidence acquired from such an intrusion may not be introduced at trial. *Id.*

The record shows the initial intrusion upon the liberty of this defendant was based upon the objective fact of another officer's request for assistance, and that request was based upon a reliable mechanical device and his own experience as he chased the defendant's car at high speeds. Similarly, the second officer's reliance on the broadcast over official radio frequencies was reasonable. We do not think that in these circumstances he should have seriously suspected that the requesting officer was engaged upon some personal errand or other pursuit unrelated to the commission of a crime.

▮▮▮ We conclude that Officer Kennedy took reasonable action to maintain the status quo until the witnessing officer arrived to take further appropriate action. *See Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32

L.Ed.2d 612 (1972). This detention was not a random or arbitrary exercise of police power condemned by the highest courts of both the nation and this state.

Secondly, the defendant asserts that under state law Officer Kennedy had no authority to effect a warrantless arrest for the misdemeanor, speeding, committed outside his presence. This common law rule is codified at T.C.A. § 40–7–103.

■ We note initially that this limitation on warrantless arrests for misdemeanors is not constitutionally required. Further, in states that retain the rule, it is frequently held that in light of the increased speed with which offenders may flee from a witnessing officer and modern communications techniques available to the police, an offense may be said to have been committed in the presence of the arresting officer if he is in communication with and is assisting the witnessing officer. *See e.g. Howes v. State*, 503 P.2d 1055 (Alaska 1972); *State v. Cook*, 194 Kan. 495, 399 P.2d 835 (1965); *Robinson v. State*, 4 Md.App. 515, 243 A.2d 879 (1968); *Prosser v. Parsons*, 245 S.C. 493, 141 S.E.2d 342 (1965).

■ A review of decisions in this state does not convince us that § 40–7–103 deprives a pursuing officer, who has grounds upon which to arrest a fleeing offender, of the assistance of a fellow officer when that assistance is requested in a reliable manner. The rule creates no right to escape. *See Williams v. State*, 506 S.W.2d 193 (Tenn.Cr.App.1973) (Dwyer, J., concurring).

Were the rule otherwise, the apprehension of misdemeanants, even those presenting a danger to the public, would depend entirely upon the speed of the witnessing officer or his vehicle. As the trial judge noted, the defendant's reading of the statute would prevent highway patrolmen from enforcing the speed laws by the common practice of one lookout with radar and another officer positioned to stop and issue citations.

■ We hold that the initial detention of this defendant by the officer who heard the radio transmission was lawful and evidence in plain view of the officer would be admissible at trial.

Finally, the defendant challenges the length and terms of his sentence and the trial court's refusal to grant him a restricted driver's license. He argues that T.C.A. § 55–10–403(a)(1) and –403(d) "entitles" a first offender to forty-eight hour minimum mandatory sentence, to incarceration on non-working days, and to a restricted driver's license. He further argues that the trial judge abused his discretion by applying a local policy in contravention of the statute.

T.C.A. § 55–10–403(a)(1) clearly authorizes a sentence from forty-eight hours to eleven months and twenty-nine days for a first offense, DUI. The record shows the district attorney general recommended a ten-day sentence, the defendant was aware of that recommendation, and he was given an opportunity to withdraw his plea when the court announced the ten-consecutive-day term.

■ The statute does mandate that if the sentence is the forty-eight hour minimum, it must be served on non-working days. No such limitation is placed on greater sentences. We find no abuse of discretion in the refusal to grant weekend sentencing.

§ 55–10–403(d) does not require the issuance of a restricted operator's license, but simply makes the defendant eligible for that privilege and vests the trial judge with authority and discretion in the matter. The court "may ... order the issuance of a restricted license to be used exclusively for transportation to and from the holder's place of employment."

■ The record shows the trial judge did not exercise his discretion in this case, but rather stated, "Now, I assume you also have advised Dr. Bryant that I do not give any restricted licenses," and "I've been eleven years on the bench. I've never granted a restricted license." We are of the view that the defendant was entitled to apply for such license and be heard on his application.

In *State v. Hammersley*, 650 S.W.2d 352 (Tenn.1983), the Supreme Court found an abuse of discretion in a district attorney general's failure to consider an applicant's personal eligibility for pretrial diversion. A similar policy should govern the privilege of a special license.

The pertinent statutes do not detail the factors to be considered. Certainly those found throughout T.C.A. § 55–7–113, referred to in § 55–10–403(d), are appropriate. In addition, the defendant should be given an opportunity to present evidence of the extent to which his employment would be impaired by an inability to drive, and the availability of other transportation. The court may also consider whether the defendant is likely to repeat his offense and thus create a danger to others, and whether he is likely to comply with the restrictions of the license. After giving proper consideration to these factors, the trial judge, in his discretion, may grant or refuse such application.

DAUGHTREY, J., concurs.

JOHN D. TEMPLETON, Special Judge, dissents.

JOHN D. TEMPLETON, Special Judge, dissenting.

I respectfully dissent because I am unable to agree the offense was committed in the "presence" of the arresting officer within the meaning of T.C.A. 40–7–103(1). In my opinion the evidence against appellant was the fruit of an unlawful warrantless arrest. I would reverse and dismiss.

I will restate briefly the relevant facts. Trooper John Savage detected by radar a motor vehicle approaching Manchester in the westbound lane of Interstate 24 at a speed of 110 miles per hour. He pursued the speeding vehicle along the Interstate into Manchester and off on to Highway 53 toward Woodbury. He was in touch by radio with both his own communication center in Chattanooga and the local center for Manchester and he requested assistance of Manchester police. Officer David Kennedy was directed by his communication center to go to Highway 53, "that Trooper Savage was in pursuit and needed some assistance". When Kennedy arrived at Highway 53, he turned his radio scanner on and heard Savage say "he was in pursuit of a light colored Porsche". Anticipating the Porsche might "double back" into town, Kennedy parked in a lot along Highway 53 some 500 feet from the Interstate on the Woodbury side. As he parked he heard Savage say on the radio he was at New Union School and had lost the vehicle. About a minute later Kennedy saw a light colored Porsche proceeding slowly back toward town on Highway 53. He followed and arrested appellant on the westbound Interstate ramp. It is agreed there was nothing unusual about the operation of the Porsche in Kennedy's presence. He stopped the Porsche only because he assumed it was the one Savage was looking for.

To prevent unlawful restraint of liberty for trivial causes our ancestors would not abide an arrest without a warrant except for a grave offense or for an offense committed in the presence of the arresting officer. 5 Am.Jur.2d, Arrests, Sec. 4. The first part of our statute, T.C.A. 40–7–103(1)(2)(3)(4), is said to be an embodiment of the common law. *Tenpenny v. State*, 151 Tenn. 669, 270 S.W. 989 (1925). Arrest by an officer without a warrant for a misdemeanor not committed in his presence is unlawful in our state. *Hurd v. State*, 119 Tenn. 583, 108 S.W. 1064 (1907); *State ex rel. Thompson v. Reichman*, 135 Tenn. 653, 188 S.W. 225 (1916). An offense is committed in the officer's presence where he has direct personal knowledge of the offense by the use of his senses. *Nelson v. State*, 219 Tenn. 680, 413 S.W.2d 358 (1967). Arrests for violating motor vehicle laws have been held unlawful by this Court where the arresting officers acted entirely on information received by radio from other law enforcement agents. *St. John v. State*, 491 S.W.2d 629 (Tenn.Cr.App.1972); *Williams v. State*, 506 S.W.2d 193 (Tenn. Cr.App.1973).

So, our statute provides a safeguard against seizure over and above the guaranty contained in the Fourth Amendment to the Constitution of the United States and in Article 1, Section 7 of the Constitution of Tennessee. That an arrest is lawful under these constitutional provisions does not mean necessarily it is lawful under the statute. If the arrest is without a warrant by an officer for a misdemeanor not committed "in his presence" it is unlawful.

But the Court here notes and adopts a holding in other states, "that in the light of the increased speed with which offenders may flee from a witnessing officer and modern communication techniques available to the police, an offense may be said to have been committed in the presence of the arresting officer if he is in communication with and is assisting the witnessing officer". If these circumstances obtain, the words in the statute, "in his presence", do not mean in the actual presence of the arresting officer; the offense is committed in his presence within the meaning of the statute although not actually in his presence at all. I suppose under other circumstances the words mean the same thing they always have, actual presence, whereby the arresting officer acquires direct personal knowledge of the offense by the use of his senses. By making the words "in his presence" mean out of the presence of the arresting officer in some circumstances and in his presence in others, the Court in my view imparts a Humpty Dumpty [1] quality to interpretation.

In treating of the reasons for the new rule, the Court observes that without it misdemeanants, including those endangering the public, might get away; and troopers could not enforce the traffic laws by the common practice of one trooper detecting a violation by radar and another who observes no violation making the arrest. In my opinion expediency is not a proper consideration for changing the meaning of a statute that has for its purpose the preservation of a liberty the people always have had.

The other reason for the new rule is the changes wrought by modern communication techniques available to the police. As I see it, this is the only reason that deserves consideration. The Court evidently feels that information about the offense acquired by radio is the equivalent of direct personal knowledge acquired by being present. Or as Judge Dwyer said, the information received by radio may be reliable enough to apprise the arresting officer an offense is being committed in his presence. *Williams v. State,* 506 S.W.2d 193, 198 (Tenn.Cr.App.1973).

The Court has more confidence in police radio communication than I have. The radio is used freely by numerous policemen and deputies sheriff and I am not sure all of them are anxious to prevent unlawful restraint of liberty for trivial offenses. In the very case before us Officer Kennedy had no information any offense at all had been committed. He stopped the light colored Porsche only because he assumed it was the vehicle Trooper Savage had been pursuing. There is no comfort in the fact Porsche automobiles are scarce in Coffee County. No doubt Officer Kennedy would have stopped a light colored Chevrolet if Trooper Savage had been trying to catch one.

Finally, the relatively narrow exception carved out by the Court can and will be expanded until the statute is destroyed altogether. Modern police communication spans wide geographical areas. The new rule soon will apply, if it does not already, to an arrest by an officer in Chattanooga who is in communication with and assisting a witnessing officer in Nashville. At least a court would be sorely tempted to apply the rule in such a case if the arrest turned up evidence of a heinous crime.

---

**1.** "When I use a word," Humpty Dumpty said, in rather a scornful tone, "it means just what I choose it to mean—neither more nor less."
"The question is," said Alice, "whether you can make words mean so many different things."

"The question is," said Humpty Dumpty, "which is to be master—that's all."
—*Through The Looking Glass,* by Lewis Carroll

It may be time to strike a balance between competing forces and modify the statute, say in the case of traffic violations such as driving while intoxicated. If so, the legislature is the proper department to address the problem. As I view the statute, it contains unambiguous words and their meaning has not changed. In changing the meaning the Court, in my opinion, undertakes to drive a square peg in a round hole.

## ORDER ON PETITION TO REHEAR

BYERS, Judge.

The appellant has filed a petition to rehear. After reviewing the petition, we are of the opinion he has not raised any matter which would entitle him to a rehearing.

The petition to rehear is therefore denied.

DAUGHTREY, J., and JOHN D. TEMPLETON, Special Judge, concur.