# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

## APRIL 1998 SESSION



FILED

**September 10, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | |
| Appellant, | ) | C.C.A. No. 03C01-9712-CR-00552 |
| | ) | |
| vs. | ) | Knox County |
| | ) | |
| **DAVID C. DOYAL,** | ) | Hon. Richard Baumgartner, Judge |
| | ) | |
| Appellee. | ) | (Motion to Suppress - State Appeal) |


FOR THE APPELLANT:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**TODD R. KELLEY**
Asst. Attorney General
425 Fifth Ave. N., 2d Floor
Nashville, TN  37243-0493

**RANDALL E. NICHOLS**
District Attorney General

**SCOTT GREEN**
Asst. District Attomey General
City-County Building
Knoxville, TN  37902


FOR THE APPELLEE:

**DONALD R. COFFEY**
Attorney at Law
625 S. Gay St.
Knoxville, TN  37902


OPINION FILED:_____

**REVERSED & REMANDED**

**CURWOOD WITT, JUDGE**

**OPINION**

The State of Tennessee appeals the trial court's suppression of evidence pertaining to a University of Tennessee security officer's off-campus, warrantless arrest of the defendant. The trial court suppressed the evidence based upon its conclusion that the officer was without lawful authority to effectuate the arrest under the circumstances of the case. The sole issue in this appeal is whether the trial court was correct in this conclusion.[1] Having reviewed the record, briefs, and arguments of the parties, we find merit in the state's argument, reverse the trial court's suppression ruling, and remand this matter for further proceedings.

The evidence of record consists entirely of evidence introduced by the state at a suppression hearing. The defendant's vehicle struck some street barricades on the University of Tennessee, Knoxville campus. A maintenance worker witnessed this incident and radioed its occurrence to the UT security office dispatcher. The dispatcher relayed the information on the frequency used by university security officers. Officer Vincent Busico was on campus near the area where the barricades were struck, and he went to the scene and saw the downed barricades. The maintenance worker, driving his truck, had followed the defendant and relayed the defendant's position and course to the UT dispatcher who, in turn, relayed the information to Officer Busico. Officer Busico pursued the defendant via these transmittal directions. The chase soon left campus. The maintenance

---

[1]The state brings its appeal pursuant to Tennessee Rule of Appellate Procedure 3(c), which allows the state to appeal as of right from orders which have "the substantive effect of dismissing an indictment . . . ." Tenn. R. App. P. 3(c). We agree that the substantive effect of the suppression order is dismissal of the DUI count of the indictment. We are not so persuaded as to the reckless driving count. However, the defendant has not challenged this court's authority to consider the suppression ruling as regards the reckless driving count, and as the supreme court has said, an appellate court has the authority to consider an appeal brought improperly under Rule 3(c) as a Rule 10 appeal. See State v. Gallaher, 730 S.W.2d 622, 623 (Tenn. 1987); compare Tenn. R. App. P. 3(c) (appeal as of right by state) with Tenn. R. App. P. 10 (extraordinary appeal by permission on original application in appellate court).

2

employee continued following the defendant and broadcasting information, and the dispatcher continued to relay it over the frequency monitored by university police. Officer Busico did not have visual contact for most of the chase; however, he and another officer maintained pursuit by listening to the broadcasts.

Officer Busico did not catch up to the defendant until they were approximately 13 miles off campus at the Rutledge Pike Exit of Interstate 40. He observed the defendant was driving fast and very erratically. Officer Busico had his blue lights operating, and the defendant pulled over for him after leaving the interstate at the Rutledge Pike Exit. When Officer Busico approached the defendant's vehicle, he noticed a strong odor of alcohol. The defendant told the officer he had consumed about four beers. After performing a field sobriety test, Officer Busico placed the defendant under arrest for second offense DUI. Subsequently, the defendant was indicted for second offense DUI and reckless driving.

The issue for our determination is whether Officer Busico lawfully arrested the defendant. We hold that he did.

University of Tennessee security officers "have all the police powers necessary to enforce all state laws as well as rules and regulations of the board of regents and the board of trustees." Tenn. Code Ann. § 49-7-118(d) (Supp. 1997). This authority "extends to all facilities or property owned, leased or operated by the board of regents or the board of trustees, including any public roads or rights-of-way which are contiguous to or within the perimeter of such facilities or property." Tenn. Code Ann. § 49-7-118(d) (Supp. 1997). The powers of law enforcement officers in Tennessee include the authority to effect an arrest of a suspect who has committed a misdemeanor in the officer's presence. See Tenn. Code Ann. § 40-7-103(a)(1)

3

(1997). On occasion, this court has interpreted the officer's "presence" broadly, finding it may exist where the arresting officer did not witness the crime but has received information from another law enforcement official who was witness to the misdemeanor. See State v. Teri L. Hopson, No. 03C01-9601-CC-00007, slip op. at 5-6 (Tenn. Crim. App., Knoxville, July 8, 1997); State v. Maxie Lewis Hunter, No. 89-101-III (Tenn. Crim. App., Nashville, Oct. 13, 1989); State v. Bryant, 678 S.W.2d 480, 483 (Tenn. Crim. App. 1984). But see Williams v. State, 506 S.W.2d 193, 197 (Tenn. Crim. App. 1973) ("[A]n offense is not committed in the presence of an officer when its commission is communicated to him by another.") (citations omitted).

We begin by noting that there is no question that Officer Busico was well beyond the bounds of his jurisdictional confines of the UT campus and contiguous or peripheral public roads or rights-of-way when he arrested the defendant. Thus, in order for the arrest to be valid, it must fit within an exception to the usual territorial limits placed on the university security officer's authority by virtue of Code section 49-7-118(d) (Supp. 1997).

First, our review of the facts presented at the suppression hearing leads us to conclude that the defendant's alleged actions on campus amount, at most, to a misdemeanor.[2] Unfortunately, neither party inquired of Officer Busico regarding his purpose in chasing the defendant off campus. We question whether he planned to arrest the defendant for anything that happened on campus because once he apprehended the defendant, he only cited the defendant for DUI.[3] Perhaps

---

[2]The state does not contend that the defendant committed a felony on campus.

[3]The defendant was later indicted for reckless driving. The record does not reflect whether this charge is premised upon the events which are alleged to have occurred on campus, on the interstate, or both.

4

Officer Busico was merely going to investigate the alleged incident on campus, hoping to see the defendant's vehicle and license tag so that he might determine his identity and obtain an arrest warrant. Perhaps the officer planned to talk to the defendant to see whether he admitted striking the barricades. Simply put, we do not know.

Because the record does not reveal that Officer Busico was in pursuit of the defendant in order to arrest him for a misdemeanor witnessed by the university maintenance employee, it is unnecessary for us to consider whether the Hopson/Hunter/Bryant expansion of an officer's "presence" should be applied when the person who witnessed the misdemeanor is not also a law enforcement officer. Without evidence of Officer Busico's intent to arrest the defendant pursuant to the on-campus incident, the Hopson/Hunter/Bryant line of authority provides no basis for the arrest.

This, however, does not terminate our inquiry. In Tennessee, private citizens have the authority to effectuate warrantless arrests for misdemeanors committed in their presence. Tenn. Code Ann. § 40-7-109(a)(1) (1997). On occasion, courts have interpreted the "citizen's arrest" statute to cure defective warrantless arrests by law enforcement officers acting outside their jurisdiction. See, e.g., United States v. Layne, 6 F.3d 396 (6th Cir. 1993) (applying Tennessee law); State v. Johnson, 661 S.W.2d 854 (Tenn. 1983).

We find the case at bar controlled by our previous decision in State v. Horace Durham, No. 01C01-9503-CC-00056 (Tenn. Crim. App., Nashville, Nov. 16, 1995). In that case, an undercover police officer observed the obviously intoxicated defendant leave a club and begin driving a vehicle. Horace Durham, slip op. at 2. The undercover officer began following the defendant and called the city

5

police department, which dispatched an officer. Horace Durham, slip op. at 2. The undercover officer stayed on the phone with the police department while following the defendant. Horace Durham, slip op. at 2. The city police officer eventually caught up to the defendant and observed his erratic driving; however, the officer was beyond his jurisdictional territory when he first observed and stopped the defendant. Horace Durham, slip op. at 2. The city police officer was on duty, in uniform, driving a patrol car, and had the car's blue lights operating when he stopped the defendant. Horace Durham, slip op. at 3. The officer ultimately arrested the defendant for DUI. Horace Durham, slip op. at 2. We determined that the arrest was a lawful citizen's arrest, finding that the officer had probable cause for the initial stop and that "a police officer does not give up the right to act as a private citizen when he is off duty or out of his jurisdiction." Horace Durham, slip op. at 4 (citation omitted). Further, we rationalized that under the circumstances presented in that case, "it is good public policy to encourage a police officer to stop an apparently intoxicated driver who is endangering both himself and the public." Horace Durham, slip op. at 5.

The case at bar is like Horace Durham. Whatever Officer Busico's purpose was in pursuing the defendant, by the time he stopped the defendant he clearly had probable cause to do so. During the pursuit, Officer Busico had observed the defendant driving fast and very erratically. He had seen "broken-up and busted-up barricades" shortly beforehand, and he had information that the defendant was the one who had driven into the barricades. Although the record does not support a conclusion that Officer Busico was vested with official authority to arrest the defendant at this time, he certainly had the authority to effect a citizen's arrest for DUI based upon his own observations. In accord with our holding in Horace Durham, such a result promotes the public policy of allowing out-of-jurisdiction law enforcement officials to remove suspected drunken drivers from the

6

road before their irresponsible actions result in loss of life, permanent injury and/or property damage to themselves or innocent third parties.

Accordingly, we reverse the trial court's order suppressing evidence obtained as a result of the defendant's arrest.  We remand this matter to the trial court for further proceedings.

_____
CURWOOD WITT, JUDGE

CONCUR:


_____
PAUL G. SUMMERS, JUDGE


_____
JERRY L. SMITH, JUDGE