IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

AUGUST 1998 SESSION

FILED

July 26, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellant, | ) | No. 01C01-9710-CC-00502 |
| | ) | |
| | ) | Montgomery County |
| v. | ) | |
| | ) | Honorable John H. Gasaway, Judge |
| | ) | |
| MIKIE ASH, | ) | (Criminal trespass; possession of marijuana) |
| | ) | |
| Appellee. | ) | |

For the Appellant:

John Knox Walkup
Attorney General of Tennessee
    and
Timothy Behan
Assistant Attorney General of Tennessee
425 Fifth Avenue North
Nashville, TN 37243-0493

John Wesley Carney, Jr.
District Attorney General
    and
Arthur Bieber
Assistant District Attorney General
204 Franklin Street
Clarksville, TN 37041

For the Appellee:

Thomas R. Meeks
137 Franklin Street
Clarksville, TN 37041
(AT TRIAL)

Gregory D. Smith
One Public Square, Suite 321
Clarksville, TN 37040
(ON APPEAL)

OPINION FILED:_____

ORDER OF DISMISSAL REVERSED; CASE REMANDED

Joseph M. Tipton
Judge

**O P I N I O N**

The state appeals as of right from the Montgomery County Circuit Court's order dismissing criminal trespass and marijuana possession charges against the defendant upon its determination that he was illegally arrested and searched. The state contends that the defendant was lawfully arrested for criminal trespass and that the marijuana discovered was lawfully found pursuant to the arrest. We reverse the dismissal order and remand the case to the trial court for a determination of whether the defendant had notice that he did not have the owner's consent to be on the property on which he was arrested for trespassing.

This case involves the Clarksville Housing Authority's attempt to keep nonresidents out of its various housing projects if they are suspected of committing criminal offenses on the Authority's property. The Authority prepares a written notice form that is signed by the Executive Director and instructs the recipient not to enter Authority property, specifying areas including the sidewalks and yards. The notice provides that presence on any such property will subject the recipient to a charge of criminal trespass. The notice is served by Clarksville police officers patrolling the areas, who fill in the name and address of the suspect on the form and deliver the notice to the suspect. The suspect's name is placed on a list for future reference by the police.

At the suppression hearing, Special Operations Officer Marty Watson testified that on October 30, 1996, he saw the defendant on the sidewalk on Caldwell Lane, part of Authority property. He also said that at one point, the defendant was in the yard at the projects. He said he saw a male approach the defendant, the defendant reach out as if he were handing something to the male, and the male hand the

defendant what appeared to be money. Officer Watson said that the male's car was stopped, and marijuana was found in the car.

Officer Watson testified that he and another officer approached the defendant and asked him for his name and address, which he apparently gave as Mikie Ash, living in Ramblewood. The defendant denied previously receiving a notice letter, and Officer Clark began to prepare one. However, another officer checked the notice list and found that Mikie Ash had been served on April 2, 1996. The defendant was arrested and later found to have marijuana in his possession.

The April 2 notice letter reflects that it was served by Agent B. Clinard upon Mikie Lerome Ash, 2404 Ramblewood Drive. It also shows that the person refused to sign the notice or to take a copy of it.

In deciding the case, the trial court analyzed the provisions of the criminal trespass statute, which provide as follows:

> Criminal Trespass. -- (a) A person commits criminal trespass who, knowing the person does not have the owner's effective consent to do so, enters or remains on property, or a portion thereof. Knowledge that a person did not have the owner's effective consent may be inferred where notice against entering or remaining is given by:
>
> (1) Personal communication to the person by the owner or by someone with apparent authority to act for the owner;
>
> . . . .
>
> (b) It is a defense to prosecution under this section that:
>
> (1) The property was open to the public when the person entered and remained;
>
> (2) The person's conduct did not substantially interfere with the owner's use of the property; and
>
> (3) The person immediately left the premises upon request.

(c) For purposes of this seciton, "enter" means intrusion of the entire body.

(d) Criminal trespass is a Class C misdemeanor.

Tenn. Code Ann. § 39-14-405. The trial court acknowledged that the defendant was on Authority property knowing that he did not have the Authority's effective consent in terms of the defendant knowing the officer's apparent authority in serving the notice letter. It noted that these facts complied with subsection (a) of the criminal trespass statute. However, it determined that under subsection (b), it is a defense if (1) the property is open to the public, (2) the person does not substantially interfere with the owner's use of the property, and (3) the person immediately leaves the premises upon request. The trial court concluded that the import of subsection (b)(3) is that a person must be asked to leave immediately and then fail to leave before he or she has committed criminal trespass, even if the person has been previously notified to stay off the property. The trial court essentially concluded that the failure to advise the defendant to leave immediately meant that he was not committing an offense under the criminal trespass statute and that his subsequent arrest was illegal.

The state contends that the police had probable cause to arrest the defendant and that the trial court's reliance upon the statutory defense to prosecution places an improper legal standard of beyond a reasonable doubt upon the police's authority to arrest persons. It relies upon State v. Kenneth Antonio Lillard, No. 01C01-9602-CC-00051, Rutherford County (Tenn. Crim. App. Feb. 12, 1997), in which this court held that probable cause to arrest for criminal trespass existed when the officer knew that the defendant had been ordered to stay away from the property where he was found. Slip op. at 3.

The defendant responds that ordering him to leave the premises immediately is a condition precedent to a criminal trespass occurring and that without the order, no probable cause to arrest exists. He asserts that the state's position would

4

improperly limit the application of the statutory defense to a trial. Also, the defendant seeks to distinguish Lillard, noting that it involved a court order to stay away and evidence that the officer knew Lillard had been so ordered, while the evidence in the present case does not show that the officers knew if the defendant had actally been told to stay away. The defendant notes, as well, that Lillard does not indicate if the defense in Tenn. Code Ann. § 39-14-405(b) was even considered.

As for the state's assertion that the trial court used the wrong legal standard, we disagree. Probable cause to believe that an offense has been committed is a fact-specific standard that is objective in nature. If the facts known to the police sufficiently reflect that the defendant was on property open to the public and doing nothing to interfere with the owner's use of the property, then there would be no criminal trespass until the defendant was ordered to leave immediately but failed to comply. Obviously, the offense would be committed when the order to leave was given but not followed. Thus, we believe that the trial court analyzed the facts under the appropriate standard.

However, we believe that the trial court misapplied the criminal trespass law requirements. We conclude that a specific order by an owner to a person to stay away from the owner's property constitutes notice sufficient to make a knowing return by the person to the property a violation of the criminal trespass statute. In this respect, we believe that the order to stay away effectively provides the notice that is at the heart of the defense provided by the statute. That is, it is questionable to infer guilty knowledge of trespassing when the person is on property open to the public and acting innocuously -- thus, the need for the person to be asked to leave. On the other hand, a specific order to a specific person to stay off specific property carries no similar question as to the person's knowledge when he or she enters upon that property.

5

The trial court's reasoning would mean that even if the officers, as agents for the Housing Authority, stood at the property line and told the defendant not to enter, the defendant would not be criminally trespassing if he then entered the property until he was requested to leave but failed to do so. We do not believe that Tenn. Code Ann. § 39-14-405(b) provides such a defense that would allow persons to persist in continued entries to barred property. Thus, we agree with Lillard that if an officer knows that a person has been ordered to stay off housing project property and subsequently sees the person on the prohibited property, the officer can lawfully arrest the person for criminal trespass.

However, this does not end our analysis. A misdemeanor arrest without a warrant, as occurred in the present case, may only occur for an offense committed or threatened to be committed in the officer's presence. Tenn. Code Ann. § 40-7-103(a)(1). Obviously, the defendant's presence on the Authority's property was personally observed by the arresting officers. However, their knowledge that this constituted a criminal trespass depended upon the report of others that the defendant knew that he did not have the Authority's effective consent to be on the property. We must now determine whether the arresting officers could rely upon this report such that the offense can be said to have occurred within the presence of the arresting officers.

A review of Tennessee cases reveals that our courts initially adopted a strict interpretation of the "in the presence" requirement. In Hurd v. State, 119 Tenn. 583, 593, 108 S.W.2d 1064, 1066 (1907), our supreme court determined that an attempted misdemeanor arrest for illegally carrying a pistol was illegal because the offense did not occur in the presence of the arresting officer. The court stated that the officer "was attempting to arrest the defendant for a misdemeanor which was not committed in his presence; but the fact of its commission was communicated by others, and the instruction of the trial judge that [the officer] had lawful authority to arrest

6

defendant without a warrant was erroneous." Id. Similarly, in Hughes v. State, 145

Tenn. 544, 569, 238 S.W.2d 588, 595 (1922), our supreme court, relying on Hurd,

stated the following:

> Under our statute . . . an officer may without a warrant arrest a person for a public offense committed in his presence. That means that the offense, or the facts constituting the offense, must be revealed in the presence of the officer. An officer cannot lawfully arrest a person without a warrant and search his person for the purpose of ascertaining whether or not he has violated the law. Even if the person arrested were in fact violating the law, the offense was not in legal contemplation committed in the presence of the officer, and such an arrest is unauthorized, where the facts constituting the offense are incapable of being observed or are not observed by the officer.

See also Shelton v. State, 460 S.W.2d 869, 874 (Tenn. Crim. App. 1970) (holding that

officers, who relied upon the defendant's wife's report that the defendant had beaten

her, illegally attempted to arrest the defendant for a misdemeanor not committed in their

presence); Williams v. State, 506 S.W.2d 193, 197 (Tenn. Crim. App. 1973) (holding

that "an offense is not committed in the presence of an officer when its commission is

communicated to him by another"); State v. Duer, 616 S.W.2d 614, 615 (Tenn. Crim.

App. 1981) (holding that "a warrant is not dispensed with just because others have

communicated facts to the officer to show that the offense has been committed"); State

v. Blankenship, 757 S.W.2d 354, 357 (Tenn. Crim. App. 1988) (holding that had the

defendant been arrested for leaving the scene of an accident, it would have been illegal

because the accident did not occur in the presence of the arresting officer but was

reported to him by the other person involved in the accident).


        More recently, courts in Tennessee and other states have taken a less

stringent approach to the presence requirement in certain limited circumstances,

including the involvement of more than one law enforcement officer. In State v. Bryant,

678 S.W.2d 480 (Tenn. Crim. App. 1984), an officer's radar gun registered the

defendant's speed at well over the limit, and the officer began pursuit. Unable to catch

the defendant, the officer radioed a description of the defendant's car and requested

7

assistance.  A second officer heard the dispatch and stopped the defendant, even though the officer had not witnessed any unlawful action by the defendant.  The court recognized that other states had taken a more liberal approach to the presence requirement and stated that:

> it is frequently held that in light of the increased speed with which offenders may flee from a witnessing officer and modern communications techniques available to the police, an offense may be said to have been committed in the presence of the arresting officer if he is in communication with and is assisting the witnessing officer.

Id. at 483.  The court held that the presence requirement did not deprive "a pursuing officer, who has grounds upon which to arrest a fleeing offender, of the assistance of a fellow officer when that assistance is requested in a reliable manner."  Id.; but see Id. at 485 (Templeton, S.J., dissenting) (noting that expediency and advanced technology are poor reasons for changing the meaning of a statute).

Two unreported cases have reached conclusions similar to the majority's holding in Bryant.  In State v. Maxie Lewis Hunter, No. 89-101-III, Sumner County (Tenn. Crim. App. Oct. 13, 1989), a deputy sheriff followed the defendant as he pulled into a gas station and saw that the defendant was intoxicated.  He called a Hendersonville police officer with jurisdiction, and when the officer arrived, the officer saw that the defendant was intoxicated and arrested the defendant for DUI.  The trial court granted the defendant's motion to dismiss, concluding that the offense was not committed in the presence of the arresting officer.  A panel of this court reversed the dismissal, holding that "the information in question was quite specific and . . . had been conveyed from one law enforcement officer, who had observed the commission of the offense, to another law enforcement officer . . . who made the arrest in the presence of the witnessing officer."  Slip op. at 3.  The court further noted that "the facts suggest the constructive presence of the arresting officer during the commission of the offense, if not his actual presence," and concluded that the purpose of the presence requirement,

8

to prevent groundless misdemeanor arrests of citizens based on hearsay or speculation, had not been frustrated. Slip op. at 4.

This court reached the same result under similar circumstances in State v. Teri L. Hopson, No. 03C01-9601-CC-00007, Washington County (Tenn. Crim. App. July 8, 1997). In that case, we noted that the strict and literal interpretation of the presence requirement has been relaxed in certain circumstances to allow an officer to make an arrest for a misdemeanor even though it was not committed in the officer's presence. Slip op. at 4-5; see also State v. David C. Doyal, No. 03C01-9712-CR-00552, Knox County (Tenn. Crim. App. Sept. 10, 1998) (noting that "on occasion, this court has interpreted the officer's 'presence' broadly, finding it may exist where the arresting officer did not witness the crime but has received information from another law enforcement official who was witness to the misdemeanor"). Other jurisdictions have allowed a warrantless arrest by an officer who was not the officer who witnessed the misdemeanor. See Brown v. State, 442 N.E.2d 1109, 1115 (Ind. 1982); Robinson v. State, 243 A. 2d 879, 887 (Md. 1968); State v. Standish, 363 A.2d 404, 406 (N.H. 1976); State v. Lyon, 706 P. 2d 516, 519-20 (N.M. Ct. App. 1985).

Our review of cases from other jurisdictions reveals the use of the "police team" approach, which provides that "an act taking place within the view of one officer [is] in legal effect within the [presence and] view of the other cooperating officers." Prosser v. Parsons, 141 S.E.2d 342, 346 (S.C. 1965). In People v. Dixon, 222 N.W.2d 749 (Mich. 1974), the court approved a warrantless misdemeanor arrest for driving on a suspended license when the arresting officer saw the defendant driving but was advised by headquarters that the defendant's license had been suspended. It concluded that police officers working together on a case may "combine their collective perceptions so that if the composite otherwise satisfies the presence requirement that requirement is deemed satisfied although the arresting officer does not himself witness

9

all the elements of the offense." Id. at 751-52; see also State v. Chambers, 299 N.W.2d 780, 782 (Neb. 1980) (holding that to arrest a person for a misdemeanor in the officer's presence, "[a]n officer making an arrest may rely upon the collective knowledge of all the officers involved in the case."); but see Penn v. Commonwealth, 412 S.E.2d 189, 191-92 (Va. Ct. App. 1991); Tomlin v. State, 869 P.2d 334, 338-39 (Okla. 1994).

Our review of the case law from Tennessee and other jurisdictions and our application of their principles to the facts in the present case lead us to conclude that the "police team" approach is a viable doctrine in Tennessee and is applicable in the present case. The arresting officers in the present case witnessed the defendant's presence on the Authority's property, however they learned of the fact that the defendant had been previously warned to stay off the property from a list generated by the police for officers patrolling the area. The use by one officer of reliable information from another officer does not frustrate the need to protect citizens from harassment and baseless arrests. Furthermore, it assists the police, when working together as a unit, in effectuating timely and expedient arrests. To hold otherwise would have the practical effect of making the notice letters meaningless unless the same officer who served the letter happened to be patrolling on the same day a suspect happened to be present on Authority property.

Nevertheless, we must remand the case for further consideration by the trial court relative to the reliability of the information on the list regarding the defendant's knowledge that he was barred from entering Authority property. Although the list reflects that Mikie Lerome Ash was "served" with a bar letter on April 2, which he refused to sign or to accept a copy, there is no way to determine by inference or otherwise that the defendant had sufficient knowledge of the contents of the letter such that he knew that he was barred from returning to Authority property. Absent evidence to the effect that the defendant knew that the letter barred him from entering Authority

10

property, i.e., showing that being placed on the list as "served" reliably means that the person, including the defendant, has been told the contents of the letter, there is insufficient evidence that the defendant knew that he did not have the owner's effective consent to be on the property. Therefore, the evidence would not show that the misdemeanor offense of criminal trespass was being committed in the presence of the officers.

In consideration of the foregoing and the record as a whole, we reverse the trial court's order of dismissal and remand the case to the trial court for a determination of whether the defendant had actual notice that he did not have the Authority's consent to be on the property.

_____
Joseph M. Tipton, Judge

CONCUR:

_____
Joe G. Riley, Judge

_____
Thomas T. Woodall, Judge