# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### April 22, 2025 Session

## STATE OF TENNESSEE v. WILLIAM C. SUTTON

**Appeal from the Criminal Court for Knox County**
No. 121816   G. Scott Green, Judge

No. E2024-00792-CCA-R3-CD

FILED
JUL 22 2025
Clerk of the Appellate Courts
REc'd By _____

The Defendant, William C. Sutton, received and signed a written trespass notice from Walmart informing him that he was banned from entering its retail locations for life. Less than a year later, the Defendant entered one of Walmart's retail locations and left without paying for clothing items he concealed in a plastic bag. Before trial, the Defendant made an oral motion in limine to exclude the trespass notice as inadmissible hearsay, which the trial court denied. The jury subsequently convicted the Defendant of burglary, for which he received a twelve-year sentence of imprisonment. On appeal, the Defendant argues that the trial court erred in denying his motion in limine and that the evidence is insufficient to support his conviction. After review, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, P.J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, J., and D. MICHAEL SWINEY, C.J., joined.

Jackson Fenner, Knoxville, Tennessee, for the appellant, William C. Sutton.

Jonathan Skrmetti, Attorney General and Reporter; Johnny Cerisano, Assistant Attorney General; Charme P. Allen, District Attorney General; and Jeannine Guzolek and Marissa Price, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

On June 23, 2022, the Knox County Grand Jury indicted the Defendant on two counts: burglary, a Class D felony, in violation of Section 39-13-1002(a)(3) of Tennessee Code Annotated (count one), and theft of property valued at $1,000 or less, a Class A misdemeanor, in violation of Section 39-14-146 (count two). The State subsequently dismissed count two. On October 3, 2023, before the trial court empaneled the jury, the Defendant orally moved in limine to exclude the trespass notice, in part, because the

Defendant believed the State's witness who prepared the trespass notice was unavailable to testify. The Defendant argued the trespass notice was "textbook hearsay. . . . It's an out-of-court statement admitted in court for the truth of the matter asserted—that [the Defendant] was trespassed from Walmart." Defense counsel explained that the State did not have a witness or "anybody to corroborate [the notice]." The State responded, "I don't know if there's a misapprehension of the fact," but Walmart Asset Protection Associate ("APA") Robert Sparks was present when the Defendant signed the trespass notice and would testify at trial to his firsthand knowledge that the Defendant signed the trespass notice. The trial court found that the trespass notice was "not hearsay" and denied the motion in limine.

APA Sparks was the first witness to testify at trial. He met with the Defendant, APA Robert Nuttle, a police officer, the "head AP lead," and a "woman associate" in the Chapman Avenue Walmart's Asset Protection ("AP") office on July 22, 2020. He identified the Defendant in the courtroom. APA Sparks testified that the Defendant received a trespass notice during the meeting. The State provided APA Sparks with a copy of the trespass notice, and the Defendant renewed his pretrial objection, which the trial court overruled. Before publishing the trespass notice to the jury, the trial court instructed the jury that it was "not allowed to speculate as to the reasons why the trespass notice was issued" to the Defendant. The court further instructed the jury that "the only reason you're being allowed to hear this is . . . to establish the fact, if so proven, that [the Defendant] was placed on notice that he couldn't be in Wal-Mart." The trespass notice, as illustrated below, was then admitted into evidence.



Wal-Mart Stores, Inc.
702 SW 8th Street
Bentonville, AR 72716-0615

**Walmart** Save money. Live better. | Sam's

### Notification of Restriction from Property

Walmart can prohibit individuals from entering its property who interfere with its business, shoplift, destroy property, or otherwise behave in a manner that is unacceptable to Walmart. Walmart has determined you have engaged in conduct sufficient to necessitate limiting your access to Walmart property. This document constitutes formal notice and warning that you are no longer allowed on Walmart property or in any area subject to Walmart's control. This restriction on entry includes, but is not limited to, all Walmart retail locations. Should you elect to ignore this notice and enter Walmart property, Walmart may contact law enforcement and request you be charged with criminal trespass.

### Acknowledgement of Receipt

I have read and understand this notice or, in the alternative, have had it read to me and understand and acknowledge that as of __ day of __ July __, 20 __ I am prohibited from entering Walmart property. I understand this notice will remain in effect until Walmart rescinds it.

William Sutton
Name of Recipient (Print)

X William Sutton
Signature of Recipient

Signature of Parent/Guardian (of Recipient under age 18)

For Wal-Mart Stores, Inc. (Signature and Position)
Signature of Witness

FILED
SEP 10 2024
Clerk of the Appellate Courts
REc'd By _____

- 2 -

APA Sparks testified that the trespass notice served to notify the Defendant that he was forbidden from entering Walmart property "for life." APA Sparks also testified that APA Nuttle explained the meaning of the trespass notice to the Defendant and that the Defendant did not appear confused and did not ask any clarifying questions. APA Sparks testified that he signed the trespass notice as a witness and that he observed the Defendant sign the notice. APA Sparks identified the signatures on the trespass notice as belonging to the Defendant, APA Nuttle, and his own. APA Sparks said that one of the APAs handwrote the word "life" on the trespass notice and circled it in front of the Defendant so that he understood that he was banned from Walmart for life. APA Sparks also testified that the Defendant confirmed that he understood that he was not allowed to enter Walmart property.

The State provided APA Sparks with a DVD, and APA Sparks confirmed it contained a short video clip with an audio recording of part of the conversation that took place in the AP office. APA Sparks testified that the images in the video did not depict the conversation, but the audio did. In the audio that accompanied the video, a male voice said, "We're going to trespass you today, so if you set foot back into a Walmart or Sam's Club, you go to jail for burglary," and a second male voice responded, "Yes, sir." APA Sparks testified that the second male voice belonged to the Defendant. The State entered the DVD into evidence.

On cross-examination, APA Sparks testified that there were cameras in the AP office during the June 2020 meeting, and he confirmed that the trespass notice informed the Defendant that he would be charged with criminal trespass if he entered Walmart property. APA Sparks was present for the entire AP office meeting. APA Nuttle wrote the Defendant's name and the word "life" on the trespass notice before the Defendant signed it. APA Sparks testified that Walmart maintains a list of names and photographs of people who have been banned, or trespassed, from Walmart property and that Walmart rarely lifts a lifetime ban. APA Sparks also testified that Walmart circulates the trespass list to each of its stores and that a copy of the list is kept in the AP office at the Chapman Avenue store. Walmart cashiers and greeters do not have access to the list and rarely prevent people who are on it from entering the store and making purchases.

Robert Stuart testified that he worked as an APA at the Chapman Avenue Walmart. His duties included "trespass[ing] people" by providing them with "notification that [they]'re no longer allowed on Walmart property." Walmart employs door hosts whose job entails "[g]reet[ing] customers and check[ing] receipts [for] merchandise that is not in a bag." APAs have access to the trespass list and APAs, not door hosts, apprehend shoplifters. APA Stuart identified the Defendant in the courtroom and testified that, on March 3, 2021, he saw the Defendant and a female accomplice in the clothing department

on the store's surveillance cameras. APA Stuart provided the surveillance video to the State, and the State entered a DVD with the video files into evidence.

The DVD contained seven video files, none of which contained any audio. The first video file depicted the Defendant as he entered the Walmart with his female accomplice. The second, third, fourth, and fifth video files all depict the Defendant from different angles placing various clothing items into a plastic bag while in the store's clothing section. As APA Stuart narrated the video, the plastic bag noticeably increased in size as each video progressed. At one point, the Defendant spoke with his accomplice as she handed him an item of clothing. The Defendant then left the clothing section, and he and his accomplice walked past the cash registers without paying for the clothes in his bag.

The sixth video file depicted a man, who APA Stuart identified as himself, stopping the Defendant before he could leave the store. APA Stuart testified that he left the AP office to "talk to [the Defendant] about the clothes he concealed in the bag." The Defendant told APA Stuart that he paid for his merchandise and produced a receipt, an event that is depicted in the video. APA Stuart told the Defendant that he did not pay for the clothes and that there was video footage of him selecting and concealing items before bypassing the register. The Defendant refused to accompany APA Stuart to the AP office and told him that he "better not put [his] hands on [the Defendant]," before pushing past him and leaving the store. APA Stuart told the Defendant that he would put a warrant out for him if he fled. The seventh video file depicted the Defendant and his accomplice as they walked through the parking lot, entered their car, and drove away.

APA Stuart testified that the Defendant obtained the bag depicted in the surveillance video by purchasing a cell phone in the store's electronics section. The Defendant did not make any other purchases that day. APA Stuart became suspicious of the Defendant when he saw the bag because shoplifters often "make a purchase . . . and [then] conceal merchandise in the bag after the purchase." APA Stuart confirmed that he saw the Defendant attempt to conceal clothing in his bag and that the Defendant did not pay for them. After the Defendant left the store, APA Stuart "sent in a page to the Organized Retail Crime Unit," ran the Defendant's name through the Walmart database, and learned that the Defendant was on the trespass list.

On cross-examination, APA Stuart confirmed that Walmart maintains a nationwide trespass list that APAs have access to. APA Stuart admitted that the Defendant looked familiar to him but testified that he did not immediately ask the Defendant to leave because he could not "place the name." APA Stuart did not contact anyone else in loss prevention, nor did he contact law enforcement to arrest the Defendant. APA Stuart agreed that he did not confront the Defendant until he was leaving the store.

Captain Aaron Turner of the Knox County Sheriff's Office testified that he worked as an assistant facility commander at the Roger D. Wilson Detention Facility ("RWDF"), where he was the custodian of inmate communication records. Captain Turner testified that RWDF issues identification numbers to its inmates, which the inmates use, along with a PIN they create, to make phone calls. Captain Turner testified that RWDF records the audio from all inmate phone calls and that a computer program catalogues the recordings according to each inmate's ID number, PIN, and name. The State entered into evidence screen shots from the computer program showing that, while in custody, the Defendant made phone calls on the 11th, 13th, and 21st of January 2022. The State also entered redacted audio recordings of the phone calls.

The State played a portion of one of the audio recordings in which the Defendant identified himself by his middle name. Captain Turner explained that the Defendant identified himself because the RWDF telephone system requires inmates to record their names before each call so the person at the other end knows who is calling. The State then played the rest of the recordings. In the recording of the January 11th phone call, the Defendant said, "They've got me charged on like a burglary charge because I took some pants out of Walmart." In the recording of the January 13th phone call, the Defendant said, "They're trying to make this a felony where I went into a Walmart when I wasn't supposed to be there the second time." In the recording of the January 21st phone call, the Defendant told the recipient, "They charged me with burglary for it, but it's from Walmart." The recipient responded, "I thought they kicked you out of there," and the Defendant replied, "Yeah, I already know." Captain Turner confirmed that the Defendant made all three phone calls. The State presented no further evidence, and the Defendant did not present any proof.

After the State presented its case-in-chief, the Defendant moved for a judgment of acquittal, which was denied. The jury found the Defendant guilty as charged of burglary. On January 26, 2024, the trial court held a sentencing hearing and sentenced the Defendant as a career offender to twelve years of imprisonment. The Defendant subsequently filed a motion for a new trial on February 26, 2024, which was amended on April 30, 2024. At the new trial hearing on May 2, 2024, the Defendant argued that the trespass notice was inadmissible hearsay because APA Nuttle did not testify. The State argued that APA Sparks testified as to his personal knowledge regarding the trespass notice. The trial court found that APA Sparks was able to authenticate the trespass notice because he was there for its execution, which was sufficient to allow its admission into evidence. The trial court entered a written order denying the Defendant's motion for new trial on May 3, 2024. The Defendant timely filed a notice of appeal on June 3, 2024, and this case is properly before this court for review.

## ANALYSIS

On appeal, the Defendant argues that the trial court erred in denying his motion in limine and that the evidence is insufficient to support his conviction. The State responds that the trespass notice was admissible because the Defendant adopted the statement by signing it, that any error in the admission of the trespass notice was harmless because Walmart informed the Defendant of its decision to ban him from its property for life through the recorded video files, and that the evidence is sufficient to prove each element of burglary beyond a reasonable doubt. We agree with the State.

I. Trespass Notice. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). A "statement" is "(1) an oral or written assertion or (2) nonverbal conduct of a person if it is intended by the person as an assertion." Tenn. R. Evid. 801(a). Tennessee Rule of Evidence 802 states that "hearsay is not admissible except as provided by these rules or otherwise by law." Tenn. R. Evid. 802. The appellate standard of review for rulings on hearsay evidence consists of multiple layers:

> Initially, the trial court must determine whether the statement is hearsay. If the statement is hearsay, then the trial court must then determine whether the hearsay statement fits within one of the exceptions. To answer these questions, the trial court may need to receive evidence and hear testimony. When the trial court makes factual findings and credibility determinations in the course of ruling on an evidentiary motion, these factual and credibility findings are binding on a reviewing court unless the evidence in the record preponderates against them. Gilley, 297 S.W.3d at 759-61. Once the trial court has made its factual findings, the next questions—whether the facts prove that the statement (1) was hearsay and (2) fits under one the exceptions to the hearsay rule—are questions of law subject to de novo review. State v. Schiefelbein, 230 S.W.3d 88, 128 (Tenn. Crim. App. 2007); Keisling v. Keisling, 196 S.W.3d 703, 721 (Tenn. Ct. App. 2005).

Kendrick v. State, 454 S.W.3d 450, 479-80 (Tenn. 2015). Accordingly, we will review the trial court's hearsay decision de novo. Any findings of fact or credibility determinations made by the trial court will be binding on this court, unless the evidence preponderates against them.

The extent of the Defendant's argument on appeal is that the trespass notice was "admitted for the truth of the matter asserted that the [Defendant] was trespassed for life from Walmart." In support, he asserts, "the witness through whom the notice was introduced did not prepare or sign the [n]otice." Because the person who prepared and

- 6 -

signed the notice was not called to testify, the Defendant submits the notice was "offered at trial made by a declarant other than the witness." The Defendant also contends that no exceptions to the rule against hearsay apply. After hearing that the Defendant incorrectly believed the State did not have a witness to "authenticate" or "corroborate" the notice of trespass, the trial court determined that the notice was not hearsay.

In analyzing this issue, we note that the Defendant's limited argument to the trial court and on appeal appears to be twofold: one of authentication and one of hearsay. Rule 901(a) of the Tennessee Rules of Evidence states as follows: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims." Evidence may be authenticated through testimony from a witness with knowledge that a matter is what it is claimed to be or by "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." Tenn. R. Evid. 901(b)(1), (4). In addition, "[w]ithout drawing the boundaries of practical possibilities, the rule allows proof to the court of a myriad of distinctive characteristics that may convince the judge that a questioned document is authentic enough to let the jury consider it." Tenn. R. Evid. 901, Advisory Comm'n cmt. Authentication issues are left to the discretion of the trial court. State v. Cannon, 254 S.W.3d 287, 295 (Tenn. 2008) (citing State v. Scott, 33 S.W.3d 746, 752 (Tenn. 2000); State v. Beech, 744 S.W.2d 585, 587 (Tenn. Crim. App. 1987)).

Before the notice of trespass was admitted into evidence, APA Sparks testified that he met with the Defendant, APA Robert Nuttle, a police officer, the "head AP lead," and a "woman associate" in the Chapman Avenue Walmart's Asset Protection ("AP") office on July 22, 2020. He identified the Defendant in the courtroom. APA Sparks testified that the Defendant received a trespass notice during the meeting, had it explained to him verbally, and signed the trespass notice. Contrary to the Defendant's assertion, APA Sparks also signed the trespass notice as a witness. This evidence was more than sufficient to ensure the integrity of the notice of trespass. Accordingly, we conclude that the trial court did not abuse its discretion in determining that the trespass notice was properly authenticated.

Next, interpreting the Defendant's challenge to the notice of trespass as inadmissible hearsay, the record shows there was no discussion as to why the notice of trespass was offered into evidence. Although the trial court cautioned the jury that the trespass notice was admissible to establish that the Defendant had received notice from Walmart that he was not allowed on Walmart property, this determination did not relieve the State of its obligation to comply with the rules against hearsay. As documentary evidence, the trespass notice was an out-of-court statement. In our view, the trespass notice was admitted for the dual purpose of establishing that Walmart had previously notified the Defendant that he

- 7 -

was banned from Walmart property and the Defendant's acknowledgment of the notice. See People v. Tran, 469 P.3d 568 (2020) (analyzing the trespass notice as containing two statements: Walmart's assertion that the defendant was barred from its property and the defendant's acknowledgment of the notice); see also State v. Ash, 12 S.W.3d 800, 803 (Tenn. Crim. App. 1999) (noting that a specific order by an owner to a person to stay away from the owner's property constitutes notice sufficient to make a knowing return by the person to the property a violation of the criminal trespass statute). Because the trespass notice was offered in court to establish the matter asserted-that Walmart, a retail store open to the public, revoked consent for the Defendant to enter its property, we conclude that the trespass notice was hearsay and only admissible at trial if an exception to the hearsay rule applied.

The most common basis upon which courts from other jurisdictions have examined the admissibility of trespass notices is under the business records exception to the hearsay rule. See e.g. State v. Allen, 812 S.E. 2d 192, 195 (N.C. 2018); State v. Bellerouche, 120 P.3d 971 (Wash. 2005); People v. Liner, 33 A.D. 3d 479 (N.Y. 2006). The business records exception, Tennessee Rule of Evidence 803(6), provides, in pertinent part, that

> [a] . . . report, record[ ] or data compilation, in any form, of acts, events, conditions, . . . made at or near the time by or from information transmitted by a person with knowledge and a business duty to record or transmit if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make the . . . report, record or data compilation

is admissible despite it being hearsay.

At the motion for new trial, the trial court contemplated that the trespass notice was admitted under the business records exception. The court recalled, "I mean, if it was kept in the normal course of business activity, it's a business record, but you have to have the custodian to get the record in." The court did not recall the specific testimony but stated that it would not have admitted the trespass notice absent an exception to the Rule. After reviewing its notes, the trial court stated, "I mean, it just has to be authenticated. If he was present, can say that he witnessed [the Defendant] being given notice that he's no longer allowed to be on Walmart's property, I think that's sufficient." We disagree. As previously discussed, authentication of documentary evidence is analyzed under Rule 901, and it is not the same as determining whether a document constitutes hearsay. Moreover, a witness who testifies that he or she was present when a document was executed, without more, does not mean that the document itself is admissible and not hearsay. The State appeared to believe that the no trespass document was not hearsay and failed to provide any

foundation to support the admissibility of the trespass notice as a business record or any other hearsay exception in this case.

Upon our de novo review, and based on the record before us, we nevertheless conclude that the trespass notice was admissible under Tennessee Rule of Evidence 803(1.2)(B)(Adoptive Admissions). Rule 803(1.2)(B) operates as an exception to the rule against hearsay and allows for the admission of "[a] statement offered against a party that is . . . a statement in which the party has manifested an adoption or belief in its truth." Tenn. R. Evid. 803(1.2)(B). In order for a statement to be admissible as an adoptive admission, the State must establish (1) the party against whom the statement is offered heard and understood the statement; (2) the subject matter of the statement was within the knowledge of the party; (3) the party was physically able to communicate a clarification or disagreement; and (4) the circumstances must be such that the party probably would have responded if they disagreed with the statement. See State v. Casteel, No. E1999-00076-CCA-R3-CD, 2001 WL 329538, at *23 (Tenn. Crim. App. Apr. 5, 2001) (citing Ledune v. State, 589 S.W.2d 936, 939 (Tenn. Crim. App. 1979) (recognizing tacit admission rule)). These criteria ensure that the party's silence or lack of objection can reasonably be interpreted as an acknowledgment of the statement's truth. Whether a party has adopted the statement of another is a preliminary question of fact for the trial judge which is determined by considering the context and the surrounding circumstances of the claimed adoption. See Harris v. United States, 834 A.2d 106, 116-17 (D.C. 2003) (internal citation and quotation omitted).

The record established that the Defendant heard and understood the trespass notice, that the subject matter of the notice was within the Defendant's knowledge, that the Defendant was physically able to communicate a clarification or disagreement with the notice, and that the circumstances were such that the Defendant probably would have responded or declined to sign the notice if he disagreed with it. To be clear, it is undisputed that the Defendant signed the trespass notice. See Harris v. United States, 834 A.2d at 117 (noting that a party's signature on a document created by another is a circumstance that supports a finding of adoption). By doing so, the Defendant adopted as true the explicit text reciting that he had been advised that he was no longer allowed on Walmart property. The Defendant also adopted as true the explicit text acknowledging receipt of the restriction that he was prohibited from entering Walmart. We note that the issuance of a trespass notice itself does not necessarily constitute an assertion adopted by the recipient. However, based on the Defendant's acknowledgment of receipt, the audio recording explaining the trespass notice to him on the date it was signed, and his comment in the jail recording that he knew he was not supposed to be on Walmart property, it is clear that the Defendant manifested an adoption or belief in the truth of the trespass notice. Accordingly, we conclude that the trespass notice was admissible as an adoptive admission. See State v. Wiley, No. M2007-01299-CCA-R3-CD, 2009 WL 3103768, at *35 (Tenn. Crim. App.

Sept. 29, 2009) (concluding that an employment application signed by the defendant was an admissible statement by a party-opponent); Welden v. State, No. E2021-00772-CCA-R3-PC, 2022 WL 1815476, at *6 (Tenn. Crim. App. June 3, 2022) (quoting Tenn. R. Evid. 803(1.2)(B)) (concluding that the defendant adopted a written statement prepared by law enforcement by signing it).

Finally, even if the trespass notice did not qualify as an exception to the hearsay rule, APA Sparks provided in court testimony that the Defendant was notified that he was banned from Walmart. In addition, the State introduced audio recordings of the Defendant confirming that he understood what the trespass notice meant. Based on this evidence, any error in the admission of the trespass notice was harmless.

II. Sufficiency of the Evidence. The Defendant argues that the evidence is insufficient to establish that he did not have consent to be in Walmart. In support, he maintains that the State failed to prove that he entered the store without the owner's effective consent. The Defendant relies on the testimony of "the law prevention witnesses who testified that persons on the trespass list are permitted to enter the store and make purchases, and by the fact that the Trespass Notice is inadmissible hearsay."

"Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009) (citing State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992)). "Appellate courts evaluating the sufficiency of the convicting evidence must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Wagner, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)); see Tenn. R. App. P. 13(e). When this court evaluates the sufficiency of the evidence, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom. State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)).

"In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence." State v. Dorantes, 331 S.W.3d 370, 379 (citing Duchac v. State, 505 S.W.2d 237, 241 (Tenn. 1973); Marable v. State, 313 S.W.2d 451, 456-58 (Tenn. 1958)). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" State v. Rice, 184 S.W.3d 646, 662 (quoting Marable, 313 S.W.2d at 457). This court may not substitute its own inferences for those drawn by the trier of fact in cases involving

circumstantial evidence, nor may we "weigh the evidence anew." State v. Sisk, 343 S.W.3d 60, 65 (Tenn. 2011) (citing State v. Lewter, 313 S.W.3d 745, 748 (Tenn. 2010)); State v. Stephens, 521 S.W.3d 718, 724 (Tenn. 2017) (citing Evans, 838 S.W.2d at 191). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" Dorantes, 331 S.W.3d at 379 (quoting Hanson, 38 S.W.3d at 275.

When reviewing the sufficiency of the evidence for a criminal conviction, the first step is to "examine the relevant statute(s) in order to determine the elements that the State must prove to establish the offense." Stephens, 521 S.W.3d at 723 (citing State v. Smith, 436 S.W.3d 751, 761-65 (Tenn. 2014)). The next step is "to determine whether each of the elements is supported by adequate proof." Id. at 724.

As charged in this case, Section 39-13-1002(a)(3) of Tennessee Code Annotated specifies that "[a] person commits burglary who, without the effective consent of the property owner . . . [e]nters a building and commits or attempts to commit a felony, theft, or assault[.]" Tenn. Code Ann. § 39-13-1002(a)(3). Section 39-13-1002(b)(1) defines "enter" as the "intrusion of any part of the body," and Section 39-11-106(a)(11) defines "effective consent" as "assent in fact, whether express or apparent." Id. §§ 39-11-106(a)(11), -13-1002(b)(1). Although the statute does not define "assent," Black's Law Dictionary defines it as an "[a]greement, approval, or permission; esp., verbal or nonverbal conduct reasonably interpreted as willingness." Black's Law Dictionary (12th ed. 2024); see also State v. Ivey, No. E2017-02278-CCA-R3-CD, 2018 WL 5279375, at *6 (Tenn. Crim. App. Oct. 23, 2018) (citing State v. Edmondson, 231 S.W.3d 925, 928 (Tenn. 2007)) ("When the legislature does not provide a specific definition for a statutory term, this court may look to other sources, including Black's Law Dictionary, for guidance.").

Section 39-14-146(a) of the Tennessee Code Annotated provides:

[A] person commits theft of property if the person, with the intent to deprive a merchant of the stated price of merchandise, knowingly commits any of the following acts:

(1) Conceals the merchandise;

(2) Removes, takes possession of, or causes the removal of merchandise;

. . .

[or] (7) Uses any artifice, instrument, container, device, or other article to commit or facilitate a theft[.]

- 11 -

Tenn. Code Ann. § 39-14-146(a)(1)-(2), (7).

Here, the State was required to introduce sufficient evidence to allow a reasonable jury to conclude that the Defendant (1) entered Walmart property; (2) without Walmart's effective consent; (3) and committed or attempted to commit theft inside. Id. § 39-13-1002(a)(3). The Defendant does not dispute that he entered Walmart or that he committed theft inside. Rather, the Defendant contends there was no evidence to establish that he did not have Walmart's effective consent to enter their establishment.

In support of this issue, the Defendant principally relies on his claim that the trespass notice was inadmissible hearsay. However, we have already determined that the trespass notice was properly admitted. Even if the admission of the trespass notice was improper, this court evaluates the sufficiency of the evidence in light of all of the evidence presented to the jury, including improperly admitted evidence. State v. Longstreet, 619 S.W.2d 97, 99-101 (Tenn. 1981); State v. Gilley, 297 S.W.3d 739, 763 (Tenn. Crim. App. 2008). The Defendant additionally asserts that he retained Walmart's effective consent to enter their property because persons on the trespass list were routinely permitted to enter the store and make purchases. This court has previously rejected this argument. See State v. Bowens, No. E2017-02075-CCA-R3-CD, 2018 WL 5279374, at *11 (Tenn. Crim. App. Oct. 23, 2018) ("A retail store's failure to recognize a banned individual who enters its buildings does not amount to 'assent in fact, whether express or apparent,' for the banned individual to enter the retail store.").

Viewing the evidence in the light most favorable to the State, the record shows that the Defendant signed a trespass notice. The signed trespass notification form provides clear evidence that Defendant knew he was not allowed on Walmart's property as of July 22, 2020. See State v. Ash, 12 S.W.3d at 803; State v. Lawson, No. E2018-01566-CCA-R3-CD, 2019 WL 4955180, at *9 (Tenn. Crim. App. Oct. 8, 2019). The trespass notice was witnessed by two Walmart employees, one of whom testified at trial. The trespass notice provided the Defendant with formal notice and a warning that he was prohibited from entering all Walmart property, and if the notice was ignored, Walmart could pursue criminal trespass charges. The trespass notice was also verbally explained to the Defendant. The Defendant appeared to understand the notice and did not ask any questions. An audio recording confirmed that the Defendant understood that he would face burglary charges if he entered Walmart in the future. The Defendant also admitted that he "went into a Walmart when I wasn't supposed to be there" during a phone call he made from jail. Given the overwhelming proof in this case, a reasonable juror could conclude that the Defendant lacked Walmart's effective consent to enter its property. Accordingly, the State established each of the elements of burglary beyond a reasonable doubt, and the Defendant is not entitled to relief.

## CONCLUSION

Based on the foregoing, the judgments of the trial court are affirmed.

s/ *Camille R. McMullen*
CAMILLE R. MCMULLEN, PRESIDING JUDGE